**In re Robert G. SABETTA.**

**No. 94–12–M.P.**

Supreme Court of Rhode Island.

July 24, 1995.

Jeffrey B. Pine, Atty. Gen., Robin E. Feder, Asst. Atty. Gen., Providence, for plaintiff.

John R. Mahoney, Asquith, Mahoney & Robinson, Providence, Nicholas Gorham, Gorham & Gorham, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter came before the Supreme Court following our grant of the town of Foster's petition for the issuance of a writ of certiorari pursuant to G.L.1956 (1988 Reenactment) § 42–28.6–12. The town of Foster (petitioner or town) seeks relief from a decision of a Law Enforcement Officers' Bill of Rights Hearing Committee that dismissed disciplinary charges filed against the respondent, Robert G. Sabetta, (Sabetta).

For the reasons that follow, we quash the decision of the Law Enforcement Officers' Bill of Rights Hearing Committee and remand for a hearing on the merits.

The essential facts of this case are undisputed and are summarized as follows. On

January 9, 1993, the town of Foster police department received a complaint from Charlotte Sherman that her son, Frank Sherman, had been assaulted by respondent, a patrolman in the Foster police department. On January 10, 1993, respondent was arrested by the Foster police department and charged with felony assault. On that same date he was given written notice by the town's chief of police, Donald Kettelle (Chief Kettelle), that he was suspended from duty with pay.

On March 23, 1993, respondent was indicted by a grand jury on the felony-assault charge. He has never been brought to trial on this charge. At his arraignment on March 31, 1993, respondent was given written notice by Chief Kettelle that he was suspended without pay. That notice charged respondent with the violation of six regulations of the Foster police department. It also notified respondent of his right to a hearing under the Law Enforcement Officers' Bill of Rights.

On the evening of April 14, 1993, Frank Sherman and two other young men were fatally shot; a fourth boy was shot but did not die. The next day, respondent was arrested and charged with three counts of murder and one count of attempted murder. He was subsequently tried and convicted of those charges and is currently incarcerated at the Adult Correctional Institutions. His appeal from that conviction was docketed in this court on February 8, 1995.

On the day respondent was arrested for the murders, Chief Kettelle made a statement to the press. Although the text of the chief's statement is not in the record, information attributable to the chief regarding the assault on Frank Sherman and the internal investigation was reported in the newspaper. That article reported the specific details of the assault and stated that an internal investigation by the Foster police department had led to respondent's suspension with pay. In addition, the article went on to quote Chief Kettelle as stating that respondent "knew he was in trouble and his job was on the line."

In April of 1993, Chief Kettelle also gave a videotaped interview to the television program "A Current Affair." That interview aired on May 28, 1993. The respondent's attorney contends that the following statements were made by Chief Kettelle during that interview:

"There was a complaint that one of the officers had assaulted a youth with a flashlight and, uh, the youth had lost a couple of teeth.

\* \* \*

"He [Sabetta] asked me, 'Is this a felony?' and I says, 'Yes, a flashlight, is a, is assault with a deadly weapon.' If you're convicted of a felony, you could never be a police officer again. He needed to be a police officer. It was his whole life. And when he saw it going away, he just, uh, evidently he cracked."

On October 13, 1993, the day on which respondent was indicted for the multiple murders, Chief Kettelle made additional public statements. According to an article that ran in the newspaper on October 14, 1993, it was reported that

"[t]he chief said he expected to convene an administrative hearing, under provisions of the so-called Law Enforcement Officers Bill of Rights law, within a few weeks to seek Sabetta's dismissal."

On November 16, 1993, the Law Enforcement Officers' Bill of Rights Hearing Committee (the committee) convened to address the March 23, 1993 disciplinary charges stemming from the January 1993 felony assault. The respondent's attorney filed a motion to dismiss the disciplinary charges, and at a December 14, 1993 hearing, he argued that the public comments of Chief Kettelle in the Providence Journal articles and on "A Current Affair" violated Sabetta's rights under G.L.1956 (1993 Reenactment) § 42–28.6–2(m). That section of the Law Enforcement Officers' Bill of Rights addresses the conduct of an investigation of a law enforcement officer and provides in pertinent part:

"No public statement shall be made prior to a decision being rendered by the hearing committee and no public statement shall be made if the officer is found innocent unless the officer requests a public statement; provided, however, that this subdivision shall not apply if the officer makes a public statement."

After reviewing the newspaper articles and viewing the videotape from "A Current Affair" the committee concluded that Chief Kettelle had violated § 42–28.6–2(m). The committee granted Sabetta's motion to dismiss, and on December 19, 1993, the committee filed its written decision.

On December 20, 1993, petitioner filed a motion to reconsider. The town argued that respondent and his attorney had made public statements after the committee's oral decision but prior to its written decision. These statements appeared in a December 18, 1993 Providence Journal article. The town claims that the prohibition of § 42–28.6–2(m) was no longer applicable by virtue of the statements made by respondent and his attorney. The petitioner argued that the committee should therefore reconsider its granting of the motion to dismiss. The town's motion was denied. Subsequently, the town filed a petition for issuance of a writ of certiorari, which was granted on April 22, 1994.

■ The first issue that we shall address is whether the officers' bill of rights hearing committee erred in dismissing disciplinary charges filed against Sabetta. Section 42–28.6–11 provides in pertinent part:

"(a) The hearing committee shall be empowered to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority, as provided in § 42–28.6–4."

The language of § 42–28.6 does not give the hearing committee the power summarily to *dismiss* charges for procedural violations of the Law Enforcement Officers' Bill of Rights. Therefore the panel was clearly in error in dismissing the charges filed against respondent.

■ The second issue that we shall address is whether the hearing committee erred in holding that § 42–28.6–2(m) prohibited public statements by a law enforcement agency even after an officer has been criminally charged. This court has consistently held that "[w]hen charged with the duty of statutory construction, one must read the language so as to effectuate the legislative intent behind its enactment." *Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990). Fur-

thermore, "when the language of a statute is unambiguous and expresses a clear and sensible meaning, no room for statutory construction or extension exists, and we are required to give the words of the statute their plain and obvious meaning." *Ellis v. Rhode Island Public Transit Authority,* 586 A.2d 1055, 1057 (R.I.1991).

■ In *In re Denisewich,* 643 A.2d 1194 (R.I.1994), we discussed the legislative intent behind the enactment of the Law Enforcement Officers' Bill of Rights, G.L.1956 (1993 Reenactment) chapter 28.6 of title 42. The Law Enforcement Officers' Bill of Rights "was enacted to protect police officers from infringements of their rights in the course of investigations into their alleged improper conduct." 643 A.2d at 1196 (citing *Coalition of Black Leadership v. Cianci,* 570 F.2d 12, 14 (1st Cir.1978)). It serves as the exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to disciplinary action. *City of East Providence v. McLaughlin,* 593 A.2d 1345, 1348 (R.I.1991). Section 42–28.6–2(m) does indeed prohibit public statements by a law enforcement agency even after an officer has been criminally charged; however, the proper remedy for an infringement of rights provided by the Law Enforcement Officers' Bill of Rights is provided under § 42–28.6–14, which provides in pertinent part:

"(2) Any law enforcement officer who is denied any right afforded by this subtitle may apply, either individually or through his or her certified or recognized employee organization, to the superior court where he or she resides or is regularly employed for any order directing the law enforcement agency to show cause why the right should not be afforded."

The remedy available to respondent in this case was to apply for an order in Superior Court directing the town of Foster to show cause why his right to an investigation conducted without public comment should not be afforded.

■ Since we have concluded that the hearing committee should not have dismissed the disciplinary charges filed against respondent, we shall not address the issue of the

constitutionality of § 42–28.6–2(m). We do however cite *Providence Journal Co. v. Newton,* 723 F.Supp. 846 (D.R.I.1989), for the proposition that "in the absence of a showing of 'actual interference' with the fair administration of justice, an individual is empowered by the First Amendment to comment publicly on the precise matter that is the subject of a pending investigatory proceeding." *Id.* at 856 (citing *Wood v. Georgia,* 370 U.S. 375, 389, 82 S.Ct. 1364, 1372, 8 L.Ed.2d 569, 580 (1962)).

■ In this case we have an assault with a dangerous weapon followed by three murders alleged to have been committed by a member of the police force in a relatively small suburban community. It would be ludicrous to hold that the chief law enforcement officer in that town should not be allowed to reassure the citizens there that the authorities had taken appropriate action and that the situation was under control. If Chief Kettelle's statements went beyond that issue, then the Superior Court can address the problem of whether the statements denied the respondent his rights. Dismissal of the charges under the Law Enforcement Officers' Bill of Rights statute is not only beyond the committee's authority but unwarranted.

For the reasons previously stated, the town of Foster's petition for certiorari is granted. The decision of the Law Enforcement Officers' Bill of Rights Hearing Committee is quashed, and the matter is remanded to the hearing committee with instructions to hear the disciplinary charges filed against the respondent on the merits.

BOURCIER, J., did not participate.