### PROVIDENCE LODGE NO. 3, FRATERNAL ORDER OF POLICE et al.

v.

### PROVIDENCE EXTERNAL REVIEW AUTHORITY et al.

### No. 2006–343–Appeal.

Supreme Court of Rhode Island.

July 10, 2008.

498

Lauren Jones, Esq., Providence, for Petitioner.

Jason Preciphs, Esq., Providence, for Respondent.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on May 7, 2008, on appeal by the plaintiffs—Providence Lodge No. 3, the Fraternal Order; of Police, Keith LaFazia, and Joseph Sarrasin (FOP, officers, or collectively plaintiffs)—from a declaratory judgment and order entered in favor of the defendants, Providence External Review Authority,[1] the City of Providence, and David N. Cicilline, in his capacity as mayor of the City of Providence (city, or collectively defendants). On appeal, the plaintiffs contend that the trial justice erred in: (1) refusing to strike down the Providence External Review Authority (PERA) Providence Code Sec. 18½–2 (PERA Ordinance) as unconstitutional; (2) failing to find that the PERA Ordinance was preempted by G.L. 1956 chapter 28.6 of title 42, "Law Enforcement Officers' Bill of Rights," (LEOBOR); and (3) erroneously construing this Court's decision in *City of East Providence v. McLaughlin,* 593 A.2d 1345 (R.I.1991), in which we held that an initial investigation, not conducted by law enforcement, did not transgress the

provisions of LEOBOR. For the reasons stated in this opinion, we affirm the declaratory judgment and order entered by the Superior Court.[2]

### Facts and Travel

In 2002, the PERA Ordinance was enacted by the Providence City Council to provide a system of civilian oversight with respect to the Providence Police Department. The city council did not write on a clean slate, however, because in 1973, three years before the General Assembly enacted LEOBOR, a civil rights action that was tried to completion in federal court culminated in a consent judgment (consent decree) that is still in force to this day. *See* section II, *infra.* The parties to that consent decree, the city, the FOP and others, agreed to a procedure for the filing, investigation, and adjudication of civilian complaints against members of the Providence Police Department. Additionally, the parties agreed that all uniformed officers would be assigned badge numbers and the city would maintain a roster with photographs and badge numbers of all uniformed personnel. The provisions of this consent decree have withstood two post-LEOBOR challenges in federal court.

Under the PERA Ordinance, PERA is vested with the authority to receive complaints, conduct investigations and hearings, make findings of fact, and if appropriate, forward recommendations of

---

1. The Providence External Review Authority is an agency in the City of Providence that investigates allegations of misconduct against members of the public committed by an officer or officers of the Providence Police Department. It was established in 2002, by city ordinance, to provide for a system of civilian oversight over the Providence Police Department. *See* Providence Code, Sec. 18½–2(a) (The authority shall review and investigate "all allegations of misconduct on the part of

sworn officers of the police department, * * * conduct hearings, and make findings of fact with respect to those allegations.").

2. This case was adjudicated on the basis of an agreed upon record submitted by the parties. Accordingly, the facts and travel set forth in this opinion are taken from the parties' filings.

discipline to the chief of police. In addition, PERA is charged with community outreach responsibilities to inform the public of its mission.

The PERA began receiving citizen complaints on June 24, 2005. During the next several months, four complaints were referred for active investigation, and the police department's internal affairs office was notified. On November 8, 2005, an individual filed a complaint against two Providence police officers, alleging acts of misconduct. The PERA commenced an investigation, and a notice of such was sent to each officer on March 10, 2006. The notices informed the officers that they were to contact PERA investigators by March 17, 2006, to schedule an interview. The officers failed to comply, and on August 25, 2006, PERA sent each officer a second request to schedule an interview and a notice that a hearing was scheduled to commence on September 21, 2006. The officers also were informed that, if the complaints were sustained, they could be subject to discipline in accordance with a predetermined disciplinary matrix.

As the hearing date approached, the officers turned to the Superior Court and filed a complaint seeking declaratory and injunctive relief. As grounds for relief, plaintiffs raised the same contentions that are before us: that the PERA scheme was enacted in excess of the city's authority under article 13, section 2, of the Rhode Island Constitution and that it impermissibly intruded upon an area reserved to the General Assembly, under article 13, section 4, of the Rhode Island Constitution. Further, plaintiffs contended that the PERA Ordinance was in conflict with LEOBOR and therefore was invalid. The parties entered into an agreement postponing the PERA hearing and submitted an agreed upon record to the trial justice. On November 3, 2006, the trial justice

heard argument and made a bench decision.

In his decision, the trial justice acknowledged that police matters are issues of statewide concern, but he rejected plaintiffs' contention that LEOBOR foreclosed the city's right to investigate police misconduct. The trial justice found that LEOBOR's procedural safeguards are activated at the point in time when the chief of police actually receives a recommendation that an officer should be subject to discipline, but that these procedural safeguards do not prevent the city from adopting procedures to investigate citizen complaints against its police officers. In exercising his discretion under the Uniform Declaratory Judgments Act, the trial justice declined to declare the PERA Ordinance unconstitutional. He concluded, however, that as a civilian review board, PERA had no authority to sanction an officer or direct the chief of police to impose discipline because that power was vested in the chief of police, "or perhaps someone that he [or she] designates," who may do so only in accordance with LEOBOR.

The trial justice emphasized that PERA "has no prerogative to mete out punishment to any officer whose conduct [it] investigates." Citing this Court's holding in *McLaughlin*, 593 A.2d at 1351, in which we held that "a preliminary proceeding not resulting directly in disciplinary action * * * did not have to meet the requirements of the Law Enforcement Officers' Bill of Rights[,]" the trial justice concluded that PERA may investigate complaints of officer misconduct, but he added that its authority is limited. According to the trial justice, the PERA members may recommend that an officer be disciplined, and may do so "with all the energy they can muster," but they can do no more. The decision to mete out punishment rests with

the chief of police. The trial justice flatly rejected plaintiffs' contention that the chief of police must accept PERA's recommendation and impose sanctions. He declared that the provisions of LEOBOR control the manner in which the chief of police may impose discipline, and that any provision of the ordinance that suggests otherwise should be deemed inoperative.

The trial justice denied plaintiffs' request to declare the PERA Ordinance invalid in its entirety. He found that PERA may conduct investigations and hearings of alleged police misconduct and, if the allegations are sustained, make recommendations to the chief of police. Further, the trial justice declared that the ordinance should not be construed or interpreted in any manner that would authorize PERA to impose discipline; he also ruled that the ordinance should not be construed or interpreted as authorizing or requiring the chief of police to impose discipline without affording the protections set forth in LEOBOR. The plaintiffs filed a timely notice of appeal to this Court on November 28, 2006.

## Standard of Review

■ A Superior Court decision granting or denying declaratory relief is reviewed with great deference by this Court. *Fleet National Bank v. 175 Post Road, LLC*, 851 A.2d 267, 273 (R.I.2004). In a declaratory judgment action, the trial justice undertakes a fact-finding function, without the assistance of a jury, and then decides whether to grant or deny relief. "It is well-established that 'the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" *Casco Indemnity Co. v. O'Connor*, 755 A.2d 779, 782 (R.I.2000) (quoting *Technology Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997)). The same deference will be applied to the "resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence * * *." *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314, 317 (R.I.1996) (quoting *Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 909–10 (R.I.1987)). However, a trial justice's findings with respect to questions of law will be reviewed *de novo*. *Casco Indemnity Co.*, 755 A.2d at 782.

## Analysis

■ This Court has recognized that LEOBOR is "the exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to discipline action" by a law enforcement agency for noncriminal allegations of misconduct. *In re Sabetta*, 661 A.2d 80, 83 (R.I.1995). The LEOBOR sets forth specific procedural rights for law enforcement officers who may be subject to an investigation of misconduct by a law enforcement agency.[3] *Town of North*

---

**3.** General Laws 1956 § 42–28.6–2, **"Conduct of investigation,"** provides in part:

"Whenever a law enforcement officer is under investigation or subjected to interrogation by a law enforcement agency, for a non-criminal matter which could lead to disciplinary action, demotion, or dismissal, the investigation or interrogation shall be conducted under the following conditions:

"* * *

"(3) The law enforcement officer under interrogation shall be informed of the name, rank, and command of the officer in charge of the investigation, the interrogating officer, and all persons present during the interrogation. All questions directed to the officer under interrogation shall be asked by and through one interrogator.

"* * *

"(5) The law enforcement officer under investigation shall, prior to any interrogat-

*Kingstown v. Local 473, International Brotherhood of Police Officers*, 819 A.2d 1274, 1276 (R.I.2003).

In contrast, the PERA scheme does not provide for an investigation by a law enforcement agency; nor, as modified, does it allow for police discipline.[4] The civilian members of PERA are limited to making a recommendation to the chief of police. In accordance with the limiting construction placed on the ordinance by the trial justice, and consistent with the provisions of LEOBOR, the chief of police is vested with the authority to impose discipline or to decline to do so. Whether or not the city maintains a review board similar to PERA, the discretionary determination to impose

discipline always rests with the chief of police. This Court has observed that "[r]egardless of how many incidents are uncovered [during a departmental investigation], the right to a hearing under [LEOBOR] simply does not vest until the chief or someone in a comparable position indicates that one of the sanctions envisioned by the terms of § 42–28.6–4 will be imposed upon the individual who has been charged with a violation of departmental rules and regulations." *Zincone v. Mancuso*, 523 A.2d 1222, 1225 (R.I.1987). Until such a decision is made by a police chief, the hearing provision of LEOBOR and the ensuing procedural steps are not operative. We are of the opinion that the PERA Ordinance does not conflict with

---

ing, be informed in writing of the nature of the complaint and of the names of all complainants.
"* * *

"(8) If any law enforcement officer under interrogation is under arrest, or is likely to be placed under arrest as a result of the interrogation, he or she shall be completely informed of all his or her rights prior to the commencement of the interrogation.

"(9) At the request of any law enforcement officer under interrogation, he or she shall have the right to be represented by counsel of his or her choice who shall be present at all times during the interrogation. The interrogation shall be suspended for a reasonable time until representation can be obtained.
"* * *

"(12) No public statement shall be made prior to a decision being rendered by the hearing committee and no public statement shall be made if the officer is found innocent unless the officer requests a public statement; provided, however, that this subdivision shall not apply if the officer makes a public statement. The foregoing shall not preclude a law enforcement agency, in a criminal matter, from releasing information pertaining to criminal charges which have been filed against a law enforcement officer, the officer's status of employment and the identity of any administrative charges brought against said officer as a result of said criminal charges.

"(13) No law enforcement officer shall be compelled to speak or testify before, or be questioned by, any non-governmental agency."

4. The Providence External Review Authority Ordinance provides in part:

"Within thirty (30) days of the completion of an evidentiary hearing, the hearing panel shall issue a written report containing findings of fact; a determination of whether or not the complaint has been sustained by a preponderance of the evidence; if applicable, the level of violation described in the disciplinary matrix developed by PERA and the chief of police; and *a recommendation of discipline*. When a complaint is sustained, the findings of fact and the determination shall be submitted to the chief of police. The chief shall impose discipline based upon the level of violation as found in the disciplinary matrix, to be promulgated by the authority in accordance with subsection (e)(1). The chief of police shall also provide the authority, the city council, and the mayor with a written explanation of the reason(s) for his/her disciplinary decision. The hearing panel report and the police chief's explanation for his/her decision shall be available to the public provided that the name of the complainant and/or respondent shall be kept." Prov. Code Sec. 18½–2(s) (emphasis added).

LEOBOR; nor are we persuaded that the ordinance intrudes on the constitutional prerogatives of the Legislature or those of the City of Providence.

## I

## Whether the Ordinance Violates the Rhode Island Constitution

■ Before this Court, plaintiffs' constitutional contentions are interrelated: plaintiffs argue that the PERA Ordinance is invalid and unenforceable because (1) it is preempted by LEOBOR since it purports to regulate an issue of statewide concern (*viz.*, police discipline) in violation of the Home Rule Amendment, and (2) the Legislature intended to occupy the field by its enactment of LEOBOR.[5] Additionally, plaintiffs contend that a municipality has no authority to legislatively establish a process that could lead to police-officer discipline and that, therefore, the PERA Ordinance is invalid as *ultra vires*. We reject these contentions.

■■ When confronted with an issue of preemption, it is incumbent upon the Court to determine whether the issue before us "is implicitly reserved within the state's sole domain." *Amico's Inc. v. Mattos*, 789 A.2d 899, 908 (R.I.2002). Characterized as field preemption, the usual question is whether the Legislature manifestly has controlled the subject area and has not delegated any of its authority to the cities and towns, such as is the case with respect to the spheres of education, elections, and taxation. *Id.* "[A] municipal ordinance is preempted if the Legislature intended that its statutory scheme completely occupy the field of regulation on a particular subject."

*Town of Warren v. Thornton–Whitehouse*, 740 A.2d 1255, 1261 (R.I.1999). A more complex analysis arises when there has been limited delegation of regulatory authority to the cities and towns, such as has happened with respect to the licensing and regulation of liquor establishments. *Amico's Inc.*, 789 A.2d at 908.

■ In the case before us, we are confronted with an ordinance designed to protect the rights of those citizens who may be aggrieved by unconstitutional police misconduct. In contrast, the purpose of LEOBOR is to protect police officers from any impairment of their rights when their conduct is questioned by a law enforcement agency with respect to a non-criminal matter. Secondly, LEOBOR is a legislative foray into a single aspect of the internal affairs of local police departments—officer discipline—an issue that is compounded by the fact that this effort did not come about until 1976. Generally, the appointment, qualification, remuneration, and removal of police officers by local police departments are issues of local concern. When article 13 of the Rhode Island Constitution, the Home Rule Amendment, was ratified, the cities and towns were vested with the power of self-government, including the power to legislate in local matters. *Lynch v. King*, 120 R.I. 868, 877, 391 A.2d 117, 122 (1978). However, the General Assembly retained the power to act in relation to the affairs of all cities and towns as long as the enactment did not affect the form of government. *Id.*; *see also Bruckshaw v. Paolino*, 557 A.2d 1221, 1222 (R.I.1989) (The state maintains sovereignty over matters of statewide concern, including the regulation of police affairs;

---

5. Article 13, section 2, of the Rhode Island Constitution states:

"Every city and town shall have the power at any time to adopt a charter, amend its charter, enact and amend local laws relating to its property, affairs and government not inconsistent with this Constitution and laws enacted by the general assembly in conformity with the powers reserved to the general assembly."

the Legislature may act only by legislation that affects all cities and towns or by special legislation that must be approved by the voters of the city or town to which the legislation relates.).

By enacting LEOBOR, a statute of statewide application, the General Assembly created a protected class of public servants—"permanently appointed law enforcement officers who are under investigation or subject to interrogation by a law enforcement agency for any reason which could lead to disciplinary action, demotion or dismissal." *Lynch*, 120 R.I. at 870 n. 1, 391 A.2d at 119 n. 1. The statute is not a model of clarity. However, we consistently have recognized that LEOBOR sets forth procedural guarantees for an officer who may be subject to discipline by a law enforcement agency. *See McLaughlin*, 593 A.2d at 1348. Notably, many of the statute's protections arise when the officer is facing interrogation by a law enforcement agency with respect to a noncriminal matter—an issue that has yet to come before us. Section 42–28.6–2(1)–(9).

However, this Court never has declared that, by enacting LEOBOR, the General Assembly intended to occupy the field, and we decline to do so in the present case. Indeed, as our opinion in *McLaughlin*, 593 A.2d at 1351, demonstrates, preliminary proceedings that do not directly result in the imposition of discipline are not precluded by LEOBOR. This Court consistently has held that LEOBOR is limited to noncriminal investigations of officer misconduct that are conducted by a law enforcement agency. Because PERA is not a law enforcement agency and has no authority to impose discipline, we see no constitutional infirmity in its reach.

Additionally, in the case before us, we are satisfied that the PERA Ordinance comports not only with LEOBOR, but with the consent decree. We undertake this analysis against the backdrop of federal civil rights actions against the City of Providence and its police officers.

## II

## The Consent Decree

"In 1971 a class action suit was filed in the district court of Rhode Island on behalf of the black residents of the city of Providence alleging various violations of the civil rights of the plaintiff class by the defendants, various police officers and public officials of Providence. After trial a consent decree was entered into and filed in March, 1973. The decree provided for a procedure through which civilians' complaints against police officers could be filed, investigated, and resolved. In 1976 the Rhode Island Legislature enacted a law, the 'Law Enforcement Officers' Bill of Rights' which required certain procedures to be followed in the processing of civilian complaints against police officers. This law conflicted in part with the terms of the consent decree. The city of Providence, apparently finding itself bound by inconsistent legal requirements, moved for relief from judgment. Plaintiffs and defendant, the Fraternal Order of Police of the City of Providence * * *, filed memoranda with the district court. The court construed defendant's memorandum as a motion to vacate the consent decree, denied the motion, and ordered both parties to work out modifications in the decree so that the protection of policemen's rights mandated by state law and the right of plaintiffs to be free from 'racially discriminatory police conduct' could to the extent possible, both be achieved." *The Coalition of Black Leadership v. Cianci*, 570 F.2d 12, 13 (1st Cir.1978).

Thus, three years before the enactment of LEOBOR, in settlement of a civil rights action brought against, *inter alios,* the city and the FOP, the parties entered into a consent decree. In that case, identified as *Coalition of Black Leadership v. Doorley,* Civil Action No. 4523, 349 F.Supp. 127 (D.R.I. 1972), the parties agreed to a judicially approved procedure for reporting, processing, investigating, and adjudicating citizen complaints of police brutality and misconduct. The consent decree outlined a descriptive methodology for filing and disposing of complaints against Providence police officers. Specifically, the consent decree set forth a procedure in which any person could file a complaint with a review authority known as the Bureau of Personnel, which then assigns all complaints to an investigating officer. At the conclusion of that investigation, an informal hearing is conducted, presided over by a hearing officer, selected by the director of personnel. The hearing officer is required to "make written findings of fact and, based thereon shall find the police officer or officers complained against either 'guilty' or 'not guilty.' " These findings then are submitted to the chief of police, who has thirty days in which to accept or reject the report. *The Rake v. Gorodetsky,* 452 A.2d 1144, 1146 (R.I.1982). The decision of the chief of police must be noted in the personnel file of the subject police officer. Additionally, the parties agreed that all uniformed officers would be assigned to wear numbered badges "sewn onto the left chest portion of his [or her] uniform." The Bureau of Personnel is required to maintain a roster of the names, badge numbers, and photographs of all uniformed officers.

We are of the opinion that the consent decree the parties entered into, three years before the advent of LEOBOR defeats any suggestion that the General Assembly has preempted the field. At least with respect to the City of Providence, the Legislature does not enjoy exclusive authority over the investigation of civil rights violations because that jurisdiction resides with the United States District Court, as the parties in the consent decree agreed to.[6] Further, we are satisfied that the provisions of the consent decree and those of the PERA Ordinance are sufficiently similar. Because we conclude that the PERA Ordinance, as limited by the trial justice, and the 1973 consent decree relate to the same subject matter and contain sufficiently similar provisions, we need not decide whether the General Assembly intended to occupy the field of police discipline because such a holding is irrelevant in this case. At the time LEOBOR was enacted, the players in this case already had taken the field and the contest had been decided by mutual assent. The parties are bound by the requirements set forth in the consent decree, and neither the General Assembly nor this Court can afford them any relief from those agreed-upon requirements.

■ To the extent that plaintiffs seek a ruling from this Court that prohibits the City of Providence from maintaining a procedure to receive and investigate citizen complaints of unconstitutional police behavior, that argument belongs in federal court. *See Culbreath v. Dukakis,* 630 F.2d

---

**6.** Although the trial justice failed to reference the consent decree in his decision, the city raised the issue in Superior Court and again before this Court. Accordingly, we shall affirm the judgment—partly on grounds different from those relied upon by the court below. *See New England Development, LLC v.* *Berg,* 913 A.2d 363, 369 (R.I.2007) (The Supreme Court is "free to affirm judgments of the Superior Court on grounds other than those relied on by that court, as long as the factual findings of the Superior Court support those grounds.").

15, 22 (1st Cir.1980) (noting that only the District Court supervising implementation of its decree has subject-matter jurisdiction to modify its provisions). We are not at liberty to invade the province of the federal court and reinterpret the consent decree. *See DiCiantis v. Wall*, 795 A.2d 1121, 1125 (R.I.2002) (declining to disturb a consent judgment entered in federal court).

Also, we pause to note that the permanence and inviolability of judicially approved consent judgments are familiar subjects to the parties in this case. *See Mansolillo v. Employee Retirement Board of Providence*, 668 A.2d 313, 316–17 (R.I. 1995) (negotiated consent judgment that provided for generous cost of living increases to retired city employees was valid, final, and binding upon the City of Providence); *see also City of Providence v. Employee Retirement Board*, 749 A.2d 1088, 1095 (R.I.2000) (by entering into a consent judgment the parties waived any defenses "relating to the subject matter underlying the consent judgment"). Notwithstanding that the wisdom or utility of a judicially approved consent judgment may be questioned at a later time, the parties are bound by their agreement and each side has every right to turn to the judiciary for enforcement of its terms. *Mansolillo*, 668 A.2d at 316.

### III

### Civilian Investigation

Finally, plaintiffs argue that, even if we affirm the trial justice's findings and conclude that the PERA Ordinance does not offend the state constitution, the trial justice erred when he applied this Court's holding in *McLaughlin*, 593 A.2d at 1351. In *McLaughlin*, a civilian investigator conducted a preliminary investigation of police misconduct in the absence of LEOBOR protections. *Id.* at 1347, 1351. This Court rejected the contention that this investigation violated the provisions of LEOBOR. *Id.* at 1351. "As a preliminary proceeding not resulting directly in disciplinary action, [a civilian-employee's] investigation did not have to meet the requirements of the Law Enforcement Officers' Bill of Rights." *Id.*

In this case, the trial justice recognized that, in contrast to the informal *ad hoc* investigation conducted by the city's affirmative action officer in *McLaughlin*, the procedures outlined in the PERA Ordinance provide for a formal investigation that is transparent, governed by administrative rules, and conducted by individuals responsible for enforcing the ordinance. We agree with this finding and are satisfied that PERA can coexist with LEOBOR and that the PERA Ordinance and LEOBOR do not conflict.

■ This Court has held, time and time again, that the procedural guarantees outlined in LEOBOR are confined to departmental investigations. *See In re Denisewich*, 643 A.2d 1194, 1197 (R.I.1994). We are satisfied that only when an investigation by a law enforcement agency "could result in the imposition of a disciplinary [sanction] * * * to a permanently employed law enforcement officer, [would] such [an] officer [be] entitled to a hearing on any charge arising from the investigation before a 'hearing committee' composed of three active Rhode Island law enforcement officers." *Zincone*, 523 A.2d at 1224. Accordingly, we are of the opinion that the trial justice appropriately addressed the pronouncements of this Court and that his decision is well supported by the record in this case. We accord his decision the deference to which it is due, and we affirm.

### Conclusion

For the foregoing reasons, the plaintiffs' appeal is denied and dismissed, and the

Superior Court judgment is affirmed. The papers in this case shall be remanded to the Superior Court.