DECISION
This matter is before the Court on an appeal by Detective Marc Zaccagnini (Det. Zaccagnini) from a decision of a Hearing Committee convened under the Law Enforcement Officers' Bill of Rights ("LEOBOR"). Detective Zaggagnini contends he is aggrieved by said decision which upheld the termination of his employment with the Town of Johnston Police Department ("JPD"). Jurisdiction is pursuant to G.L. 1956 §§ 42-35-15 and 42-35-15.1.
 I Facts and Travel
Detective Zaccagnini was a member of the JPD. On October 23, 2007, he was terminated from his employment with the JPD by Chief Richard S. Tamburini as a result of various violations of departmental rules and regulations, as well as for his misdemeanor convictions for wilfull trespass and vandalism after he entered a plea of nolo contendere on these charges on October 10, 2007.[1] At the plea hearing, Det. Zaccagnini admitted, under oath, to the facts which *Page 2 
formed the basis of those charges. According to those facts, on or about January 25, 2007, in the early hours of the morning, Det. Zaccagnini went to the apartment residence of a former girlfriend at 39 Dale Avenue in the Town of Johnston. He entered that apartment without consent, and then willfully and maliciously damaged the victim's front door. The charges originally were brought by the Rhode Island State Police (RISP) who investigated the incident. The internal affairs section of the JPD also joined the investigation.
On January 26, 2007, Captain David M. DeCesare (head of internal affairs for JPD) informed Det. Zaccagnini that Chief Tamburini had ordered an official internal investigation of the January 25, 2007 incident at 39 Dale Avenue. See
"Internal Affairs Complaint # 07-2-IA." ("Internal Affairs Complaint I.") Detective Zaccagnini was informed further that "[y]our actions and conduct may perhaps be criminal and if so, criminal charges may be brought against you."Id. At that time, and consistent with § 42-28.6-13(c), he was suspended, with pay, pending the outcome of the internal investigation. Id.
Later that same day, and based upon information provided by Det. Zaccagnini's former girlfriend, Chief Tamburini ordered Det. Zaccagnini to undergo a drug test. Detective Zaccagnini refused to undergo the test and was charged with willful violation of a direct order and insubordination. See "Internal Affairs Complaint # 07-2-IA." ("Internal Affairs Complaint II.") Also on January 26, 2007, Det. Zaccagnini was arraigned on criminal charges, one of which was felony breaking and entering.See id. As a result, his prior status of suspension with pay was changed to suspension without pay "due to you having been arraigned on a felony charge of Breaking and Entering."Id. Detective Zaccagnini also was informed by Capt. *Page 3 
DeCesare that "[t]his status will remain in effect until the case is adjudicated at which time your status will be re-evaluated and sanctions for these additional charges, as well as other departmental charges previously cited, will be imposed."Id. On April 24, 2007, Det. Zaccagnini submitted to a drug test, the results of which were positive for the presence of cocaine.
On October 10, 2007, Det. Zaccanini pleaded nolocontendere, under oath, to the reduced charges of wilfull trespass and vandalism. On each misdemeanor charge he received a five-year deferred sentence of imprisonment, along with fifty hours of community service. On October 21, 2007, Det. Zaccagnini allegedly was involved in another criminal incident which resulted in him being charged with disorderly conduct and simple assault on a police officer. On October 24, 2007, the Town of Johnston, through Chief Tamburini, terminated Det. Zaccagnini's employment with the JPD for, among other things, "criminal conduct."[2] An amended notice of termination was sent to Detective Zaccagnini, dated November 1, 2007.
Thereafter, Det. Zaccagnini requested a hearing pursuant to § 42-28.6-4. The hearing commenced on December 20, 2007, and it closed on February 8, 2008. At the hearing, counsel for Det. Zaccagnini challenged alleged procedural defects pertaining to the absence of sworn complaints against the detective. The Hearing Committee rejected these arguments and on March 3, 2008, by written decision on a vote of two to one, it affirmed the Police Chief's *Page 4 
decision to terminate Det. Zaccagnini's employment.[3] Detective Zaccagnini timely appealed that decision to this Court pursuant to § 42-28.6-12.
Additional facts will be supplied as necessary in the course of this Decision.
 II Standard of Review
Our Supreme Court "has recognized that LEOBOR is `the exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to discipline action' by a law enforcement agency for noncriminal allegations ofmisconduct." Providence Lodge No. 3, Fraternal Order ofPolice v. Providence External Review Authority,951 A.2d 497, 502 (R.I. 2008) (emphasis added) (quoting In reSabetta, 661 A.2d 80, 83 (R.I. 1995)). Thus, pursuant to LEOBOR, any law enforcement officer who is facing charges that may result in punitive action may request a hearing before a hearing committee consisting of three active or retired law enforcement officers.See §§ 42-28.6-1 and 42-28.6-4.
In the event that an officer receives an adverse decision from the hearing committee, he or she may appeal to the Superior Court.See § 42-28.6-12. For the purpose of any such an appeal, the hearing committee is "deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of §§ 42-35-15 and 42-35-15.1." Section 42-28.6-12 (the "Administrative Procedures Act").
Section 42-35-15(g) provides that: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify *Page 5 
the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 "(1) In violation of constitutional or statutory provisions:
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision pursuant to § 42-35-15, the Court may not substitute its judgment for that of the agency with respect to credibility of witnesses or the weight of evidence concerning questions of fact. See Center for BehavioralHealth v. Barros, 710 A.2d 680, 684 (R.I. 1998); Mine SafetyAppliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). As such, the Court's review is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." JohnstonAmbulatory Surgical Assocs., Ltd. V. Nolan,755 A.2d 799, 805 (R.I. 2000) (quoting Barrington Sch. Comm. v.R.I. State Labor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992)). Competent or substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Newport Shipyard v. R.I. Comm'n for Human Rights,484 A.2d 893, 897 (R.I. 1984) (quoting Caswell v. George ShermanSand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The appeal to this Court is not grounded on the hearing committee's basing its decision on inadequate evidence, but only on the alleged procedural defects in the manner by which the JPD disciplined the detective. *Page 6 
The Court "may reverse [the] findings of the administrative agency only in instances where the conclusions and the findings of fact are totally devoid of competent evidentiary support in the record, or from the reasonable inferences that might be drawn from such evidence." Bunch v. Bd. Of Review,690 A.2d 335, 337 (R.I. 1997) (citations omitted). "Questions of law, however, are not binding on the court and may be reviewed to determine what the law is and its applicability to the facts."Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (1977).
 III Analysis
Detective Zaccagnini asserts that the notice provisions of the LEOBOR were violated, and that he suffered a denial of due process as a result of those alleged violations. Specifically, Det. Zaccagnini asserts that the complaint was not sworn by Chief Tamburini as required by § 42-28.6-2(d) of the LEOBOR. Consequently, he avers that the Hearing Committee did not have jurisdiction to hear the merits of the complaint. Detective Zaccagnini maintains that the Hearing Committee should have dismissed the action due to these alleged procedural deficiencies.
Before addressing the merits of Det. Zaccagnini's allegations, the Court first observes that despite Det. Zaccagnini's allegations of error, the Hearing Committee did not have the authority to dismiss the matter due to procedural defects. Section 42-28.6-11(a) provides: "The hearing committee shall be empowered to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority, as provided in § 42-28.6-4." In interpreting this provision, our Supreme Court held that the LEOBOR "does not give the hearing committee the power summarily todismiss charges for procedural violations of the Law Enforcement *Page 7 
Officers' Bill of Rights." In re Sabetta, 661 A.2d at 83;see also Foti v. County of San Mateo, 90 Fed.Appx. 488, 491 (C.A.9 2003) (observing that at most, proceeding in the absence of a written, sworn complaint may be deemed a "grave procedural error"). Accordingly, the Hearing Committee would not have had the authority to summarily dismiss this matter due solely to alleged procedural violations.
It is well-established that the interpretation of a statute is a question of law. See Palazzolo v. State ex rel.Tavares, 746 A.2d 707, 711 (R.I. 2000). Where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. of Employees'Retirement System of State v. DiPrete,845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). Accordingly, when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Id.; see alsoState v. Santos, 870 A.2d 1029, 1032 (R.I. 2005) ("The plain statutory language is the best indicator of legislative intent.").
Furthermore, under our cannons of statutory interpretation
 "[t]he construction of legislative enactments is a matter reserved for the courts, . . . and, as final arbiter on questions of construction, it is this court's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." State v. Greenberg, 951 A.2d 481, 489 (R.I. 2008) (quoting Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987)).
To accomplish this task, the Court must examine "`the language, nature, and object of the statute[,]' to glean the intent of the Legislature." Id. (quoting State v. Pelz,765 A.2d 824, 829-30 (R.I. 2001)). However, when construing statutes, this Court will not interpret statutory *Page 8 
schemes in such a manner as to reach an absurd result. SeeLong v. Dell, Inc., 984 A.2d 1074, 1081 (R.I. 2009).
The LEOBOR was enacted in order "to protect the rights of policemen threatened with [or subject to] disciplinary action."Zincone v. Mancuso, 523 A.2d 1222, 1224 (R.I. 1987) (quotingLynch v. King, 120 R.I. 868, 875, 391 A.2d 117, 121 (1978)). As such, LEOBOR "is the exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to discipline action by a law enforcement agency fornoncriminal allegations of misconduct." Providence LodgeNo. 3, Fraternal Order of Police v. Providence External ReviewAuthority, 951 A.2d 497, 502 (R.I. 2008) (emphasis added and internal quotations omitted). Accordingly, "[t]he LEOBOR sets forth specific procedural rights for law enforcement officers who may be subject to an investigation of misconduct by a law enforcement agency." Id. (quoting Town of North Kingstown v.Local 473, International Brotherhood of Police Officers,819 A.2d 1274, 1276 (R.I. 2003).
The purpose of a complaint is "[t]o afford fair notice to the adversary of the nature and basis of the claim asserted and a general indication of the type of litigation involved."Minnesota Mining Manufacturing Co. v. Carborundum Co.,3 F.R.D. 5, 7 (D.Del. 1943). Section 42-28.6-2 of the LEOBOR provides in pertinent part:
 "Whenever a law enforcement officer is under investigation or subjected to interrogation by a law enforcement agency, for a non-criminal matter which could lead to disciplinary action, demotion, or dismissal, the investigation or interrogation shall be conducted under the following conditions:
 . . .
 (4) No complaint against a law enforcement officer shall be brought before a hearing committee unless the complaint be duly sworn to before an official authorized to administer oaths." (Emphasis added.) *Page 9 
It is clear from its plain and ordinary language that § 42-28.6-2 governs investigations of only noncriminal matters and requires that any complaints of a noncriminal nature against an officer be made by sworn complaint. Section 42-28.6-2 is silent with respect to the necessary procedures with respect to alleged misconduct which is the subject of criminal complaints. Perhaps the reason for the Legislature's silence with respect to criminal matters is because a criminal defendant is afforded fair notice of criminal charges and due process within the judicial system and that to require a sworn complaint within the LEOBOR would be redundant. It is undisputed that Det. Zaccagnini was arraigned on January 26, 2007, and the Court takes judicial notice that a sworn criminal information was filed in the Superior Court on March 21, 2007. See State v. Zaccagnini, P/2-2007-1074A. Detective Zaccagnini does not assert that he was denied due process in the criminal matter; indeed, he knowingly and voluntarily entered a plea in that case.
Section 42-28.6-4 provides in pertinent part:
 "(a) If the investigation or interrogation of a law enforcement officer results in the recommendation of some action, such as demotion, transfer, dismissal, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, before taking such action, the law enforcement agency shall give notice to the law enforcement officer that he or she is entitled to a hearing on the issues by a hearing committee. The law enforcement officer may be relieved of duty subject to § 42-28.6-13 of this chapter, and shall receive all ordinary pay and benefits as he or she would have if he or she were not charged.
 . . .
 (b) Notice under this section shall be in writing and shall inform the law enforcement officer of the following:
 (i) The nature of the charge(s) against him or her and, if known, the date(s) of the alleged offense(s);
 (ii) The recommended penalty; *Page 10 
 (iii) The fact that he or she has five (5) days from receipt of the notice within which to submit a written request for a hearing; and
 (iv) The name and address of the officer to whom a written request for a hearing (and other related written communications) should be addressed.
 . . .
 (h)
 . . .
 (i) Whenever a law enforcement officer faces disciplinary action as a result of criminal charges, the provisions of subsections (c), (d), (e) and (f) shall be suspended pending the adjudication of said criminal charges." (Emphasis added.)
According to § 42-28.6-4(b) "[n]otice under this section shall be in writing. . . ." Unlike § 42-28.6-2(4), there is no requirement that such notice be made by sworn complaint. Consequently, the Court is satisfied that the signed letter of dismissal from Chief Tamburini to Det. Zaccagnini was sufficient notice under § 42-28.6-4. The Court further concludes that even if the sworn complaint requirements of § 42-28.6-2 applied to alleged criminal activity, the Court is satisfied that the Internal Affairs Complaint II fulfilled that alleged requirement.
Section 42-28.6-13 of the LEOBOR governs suspensions of law enforcement officers. It permits the imposition of a suspension with pay "by the chief or the highest ranking sworn officer of the law enforcement agency when the law enforcement officer is under investigation for a criminal felony matter." Section 42-28.6-13(c). Thereafter, if a law enforcement officer "is charged, indicted or informed against for a felony . . . [he or she] may be suspended without pay and benefits at the discretion of the agency or chief or highest ranking sworn officers. . . ." Section 42-28.6-13(g). With respect to dismissals due to felonious conduct, § 42-28.6-13(i) provides in pertinent part:
 "Any law enforcement officer who pleads guilty or no contest to a felony charge or whose conviction of a felony has, after or in the absence of a timely appeal, become final may be dismissed by the *Page 11 
law enforcement agency and, in the event of such dismissal, other provisions of this chapter shall not apply."
In the instant matter, the record reveals that upon learning of the incident at 39 Dale Avenue and of the RISP investigation thereof, Chief Tanburini instructed Captain David M. DeCesare to suspend Det. Zaccagnini, with pay, pending the outcome of the criminal investigation. See § 42-28.6-13(c) (permitting the imposition of a suspension with pay where there is an ongoing investigation into a police officer's alleged criminal conduct). Accordingly, Captain DeCesare notified Det. Zaccagnini of the suspension by way of a sworn document entitled "Internal Affairs Complaint # 07-2-IA." See Internal Affairs Complaint I. The document stated that Chief Tamburini had ordered an official internal investigation of the events surrounding the incident at 39 Dale Avenue, and that criminal charges may be brought against Det. Zaccagnini as a result. See id. The document also stated that Det. Zaccagnini may have committed other non-criminal departmental violations; e.g., "Truthfulness" and "Conduct Unbecoming an Officer." Id.
When Det. Zaccagnini was arraigned on a felony charge later that day, Captain DeCesare amended Det. Zaccagnini's status to suspension without pay. See § 42-28.6-13(g) (permitting a suspension without pay where the police officer is charged with a felony). Accordingly, in a second sworn document, also entitled "Internal Affairs Complaint # 07-2-IA," Capt. DeCesare notified Det. Zaccagnini that because he refused Chief Tamburini's lawful order to submit to a drug test "further sanctions will be imposed againstyou for willful violation of a direct order." Internal Affairs Complaint II (emphasis added). Captain DeCesare also notified Det. Zaccagnini that he was "being charged withinsubordination[.]" Id. (emphasis added). Of particular note, Capt. DeCesare notified Det. Zaccagnini that his status of suspension with pay was being changed to suspension without pay *Page 12 
 "due to you having been arraigned on a felony charge of Breaking and Entering[,] . . . [and that] [t]his status will remain in effect until the case is adjudicated at which time your status will be re-evaluated and sanctions for these additional charges, as well as other departmental charges
previously cited, will be imposed." Id. (emphasis added).
Although Det. Zaccagnini contends that Internal Affairs Complaint II constituted notice of an internal investigation, that document did not make reference to any investigation; rather, it notified him of specific charges being brought against him for certain, specified conduct. It also notified him that sanctions will be imposed on the pending criminal charges upon adjudication of that criminal matter. It further advised him that disciplinary action for the non-criminal violations of departmental rules also was being suspended pending adjudication of the criminal charges.See Section 42-28.6-4(h)(i) (suspending enumerated procedural provisions pending adjudication of criminal charges against an officer). In light of the specificity of Internal Affairs Complaint II, the Court is convinced that even if a sworn complaint was required for the criminal matter, Internal Affairs Complaint II constituted a sworn complaint for purposes of § 42-28.6-2(4).
It is undisputed that on October 10, 2007, Det. Zaccagnini entered a sworn nolo contendere plea to amended charges. "It is well settled in this state that, `[a] plea of nolo contendere is the substantive equivalent of a guilty plea. . . .'" Rodrigues v.State, 985 A.2d 311, 315 (R.I. 2009) (quoting State v.Figueroa, 639 A.2d 495, 498 (R.I. 1994)). Thus, for purposes of § 42-28.6-13(i), Det. Zaccagnini's nolo contendere plea amounted to a plea of guilt. As he gave up his right to an appeal at the plea hearing, that conviction became final when it was entered on October 10, 2007.
Upon learning of the convictions (and the intervening unresolved criminal charges stemming from the October 21, 2007 incident) Chief Tamburini dismissed Det. Zaccagnini. *Page 13 
While Chief Tamburini referenced numerous non-criminal bases for the dismissal, he also referenced the criminal convictions, entered on October 10, 2007, as a basis for the dismissal. The Court concludes that such convictions, standing alone, constituted a sufficient basis for the dismissal. The Court also observes that but for the plea to the reduced charges, Det. Zaccagnini faced a trial and a possible felony conviction on the breaking and entering charge. Had he been convicted on that felony, Chief Tamburini could have dismissed Det. Zaccagnini summarily, and Det. Zaccagnini would have been without any recourse under the LEOBOR.See § 42-28.6-13(i) (stating that LEOBOR does not apply to dismissals as a result of a felony conviction). By entering his plea to the reduced charge of misdemeanor wilfull trespass, Det. Zaccagnini avoided such summary dismissal and received a full hearing under the LEOBOR where evidence of his crimes was set forth fully. The Court is satisfied that Det. Zaccagnini received adequate notice of the criminal charges against him and possible resulting sanctions, both by way of the criminal information, Internal Affairs Complaint II, and the letter of dismissal. The Court is satisfied further that Det. Zaccagnini also received adequate due process with respect to the criminal charges.
 IV Conclusion
After reviewing the record, this Court concludes that the Hearing Committee's decision to affirm Chief Tamburini's dismissal of Det. Zaccagnini was based on reliable, probative, and substantial evidence in the record, its actions were not arbitrary or capricious or characterized by an abuse of discretion, and was not in excess of its statutory authority. Thus, Det. Zaccagnini's substantial rights have not been prejudiced. Accordingly, Det. Zaccagnini's appeal is denied, *Page 14 
and the decision of the Hearing Committeee is affirmed. Counsel shall prepare an appropriate judgment for entry.
[1] Originally, Detective Zaccagnini had been charged by Criminal Information with the crimes of breaking and entering in violation of G.L. 1956 § 11-8-2; domestic disorderly conduct in violation of G.L. 1956 § 11-45-1(a) and G.L. 1956 § 12-29-5; and domestic vandalism in violation of G.L. 1956 § 11-44-1 and § 12-29-5. As part of the plea agreement, the felony charge of breaking and entering was reduced to misdemeanor wilfull trespass, the domestic disorderly conduct charge was dropped, and the domestic vandalism charge was reduced to misdemeanor vandalism.
[2] The decision to terminate Det. Zaccagnini's employment was based upon the following violations of the JPD's rules and regulations: one count of use of official position; one count of reporting for duty; one count of failure to report for duty; one count of address and telephone; one count of truthfulness; eighty counts of duty to obey; four counts of criminal conduct; three counts of conduct unbecoming of an officer; and eighty counts of insubordination.
[3] One member of the Board dissented on grounds that there existed grave procedural errors that rendered the case fatally defective. The Hearing Committee stayed its decision with respect to the alleged criminal incident of October 21, 2007, pending adjudication of the related criminal charges. It reserved the right to rehear that issue.