**INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, Local 569**

v.

**CITY OF EAST PROVIDENCE.**

**No. 2008–328–Appeal.**

Supreme Court of Rhode Island.

Feb. 25, 2010.

Gary T. Gentile, Esq., for Plaintiff.

Gina A. DiCenso, Esq., for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, and
ROBINSON, JJ.

### OPINION

Justice GOLDBERG, for the Court.

This case comes before us on the plaintiff's appeal from a Superior Court decision declaring that the defendant, the City of East Providence and its police department (city or department), acted properly when it discharged Officer Sean Sullivan (Sullivan) for non-disciplinary reasons without employing the hearing procedure required by the Law Enforcement Officers' Bill of Rights (LEOBOR).[1] The plaintiff, International Brotherhood of Police Officers, Local 569 (union),[2] argues on appeal that Sullivan's constitutional right of due process was violated when the city failed to comply with the LEOBOR. For the reasons that follow, we affirm the Superior Court's judgment.

### Facts and Travel

The facts in this case largely are undisputed. Since 2002, Sullivan was employed as a full-time police officer; on October 19, 2005, while on duty, Sullivan experienced chest pain, sweating, dizziness, and pain in his right arm. He was taken to the hospital and diagnosed with malignant hypertension and stress. The city placed Sullivan on injured-on-duty (IOD) status. On February 7, 2006, Sullivan was authorized to return to work; however, he did not do so. On March 23, 2006, a physician opined that although "the actual incident that took him out of work had nothing to do with work at all," Sullivan remained unfit to return to duty. After a number of additional exchanges of correspondence, Sullivan ultimately was cleared to return to light duty work. Sullivan then expended his unused vacation time until May 19, 2007, at which time he returned to light duty for three days; on the third day he left early, without an explanation. He was placed on leave without pay.

When Sullivan still had not returned to work after six months, he was notified that

---

1. General Laws 1956 § 42–28.6–14(b) provides:

   "Any law enforcement officer who is denied any right afforded by this subtitle may apply, either individually or through his or her certified or recognized employee organization, to the [S]uperior [C]ourt * * * for any order directing the law enforcement agency to show cause why the right should not be afforded."

2. At all relevant times in this case, the union was the exclusive bargaining representative for all permanent, full-time police officers employed by the East Providence Police Department, excluding the chief of police.

he was permanently discharged.[3] In its letter of termination, the department explained that, "[t]his separation of service is non-disciplinary as it is a consequence of your inability to return to work based on a non-work related illness."

Ten days later, the union filed a complaint seeking declaratory relief in Superior Court, alleging that the department violated Sullivan's due process rights when it discharged Sullivan without a hearing as mandated by the LEOBOR, G.L.1956 § 42–28.6–4. The department filed an answer and counterclaim contending that because the LEOBOR only applies to punitive disciplinary matters, its hearing provision only applies to terminations stemming from police officer misconduct. In a written decision, the then-presiding justice of the Superior Court found that the statute's terms are clear and unambiguous and that the hearing provisions of § 42–28.6–4 are triggered only when there are allegations of misconduct directed against the police officer. The then-presiding justice held that, because Sullivan was terminated for a non-work related injury and since "there exists not one scintilla of evidence that Officer Sullivan violated any rules or regulations, or * * * the law," the department was not required to provide Sullivan with a hearing in accordance with the LEOBOR.

## Standard of Review

 This Court accords great deference to a trial justice's decision to grant or deny declaratory relief. *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority,* 951 A.2d 497, 502 (R.I.2008) (*Providence Lodge*

*No. 3).* "[W]e review a declaratory decree of the Superior Court with an eye to whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority." *Sullivan v. Chafee,* 703 A.2d 748, 751 (R.I.1997). However, a trial justice's findings regarding a question of law will be reviewed *de novo. Providence Lodge No. 3,* 951 A.2d at 502 (citing *Casco Indemnity Co. v. O'Connor,* 755 A.2d 779, 782 (R.I.2000)). Additionally, this Court reviews issues of statutory interpretation *de novo. Town of North Kingstown v. Albert,* 767 A.2d 659, 662 (R.I.2001).

## Analysis

 After careful review of the record before us and mindful of our standard of review, we reject the union's arguments and affirm the decision of the then-presiding justice. We are satisfied that the terms of the LEOBOR are clear and unambiguous and that the then-presiding justice properly employed its provisions. "If a statutory provision is unambiguous, there is no room for statutory construction and we must apply the statute as written." *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994). Because the LEOBOR is limited to instances of alleged police officer misconduct, the statute is wholly inapplicable in the case at bar.

The hearing provisions of the LEOBOR refer to circumstances in which permanent, full-time police officers are *under investigation* or *interrogation* by department officials and accordingly are protect-

---

3. Before Sullivan received this notification, the union filed a grievance on Sullivan's behalf, contending that the collective bargaining agreement (CBA) between the union and the city requires that the department carry Sullivan on IOD status. The grievance went to arbitration, and on October 2, 2007, the arbitrator found that the department did not violate the CBA when it refused to place Sullivan on IOD status because Sullivan already had returned to work from the October 2005 incident.

ed by its terms.[4] Section 42–28.6–4. The term "hearing committee" is defined as "a committee which is authorized to hold a hearing *on a complaint* against a law enforcement officer * * *." Section 42–28.6–1(2)(i) (emphasis added). The term "hearing" is defined as "any meeting *in the course of an investigatory proceeding*, other than an interrogation * * *." Section 42–28.6–1(3) (emphasis added). Section 42–28.6–4(a) describes the right to a hearing under the LEOBOR. Section 42–28.6–4(a) provides in pertinent part:

"If *the investigation or interrogation* of a law enforcement officer results in the recommendation of some action, such as demotion, transfer, dismissal, loss of pay, reassignment, or similar action which would be considered a punitive measure, then, before taking such action, the law enforcement agency shall give notice to the law enforcement officer that he or she is entitled to a hearing * * *." (Emphasis added.)

This Court previously has held that "the right to a hearing under [the LEOBOR] simply does not vest until the chief or someone in a comparable position indicates that one of the sanctions envisioned by the terms of § 42–28.6–4 will be imposed upon the individual who has been charged with a violation of departmental rules and regulations." *Providence Lodge No. 3,* 951 A.2d at 503 (quoting *Zincone v. Mancuso,* 523 A.2d 1222, 1225 (R.I.1987)). "Until such a decision is made by a police chief, the hearing provision of [the] LEOBOR and the ensuing procedural steps are not operative." *Id.*

Additionally, this Court has declared on numerous occasions that the LEOBOR is " 'the exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to disciplin[ary] action' by a law enforcement agency for noncriminal allegations of misconduct." *Providence Lodge No. 3,* 951 A.2d at 502 (quoting *In re Sabetta,* 661 A.2d 80, 83 (R.I.1995)); *see, e.g., Town of North Kingstown v. Local 473, International Brotherhood of Police Officers,* 819 A.2d 1274, 1276 (R.I.2003) (recognizing that the Legislature intended that the LEOBOR outline "a comprehensive mode of procedure to govern the investigation of a police officer for misconduct"); *In re Denisewich,* 643 A.2d at 1196 (recognizing that the LEOBOR is the "exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to disciplinary action" for alleged improper conduct); *City of East Providence v. McLaughlin,* 593 A.2d 1345, 1348 (R.I.1991) (holding that the LEOBOR is the exclusive remedy for permanently appointed police officers "under investigation by a law-enforcement agency").

After Sullivan's doctors diagnosed him unfit for regular service as a police officer, based on a non-work related ailment, but capable of performing light duty, he left work and never returned. It is undisputed that the department neither investigated Sullivan nor alleged that he was involved in any misconduct. Thus, the procedural protections that permanent, full-time police officers are afforded under the LEOBOR are wholly unavailable to Sullivan in this instance.

■ Sullivan was a public employee whose property interest in continued employment, absent police misconduct, was created and defined by the Revised Ordinances of the City of East Providence

---

4. We note that § 42–28.6–1(2)(i) refers to a law enforcement officer under investigation or interrogation as "the aggrieved" officer.

§ 12–20,[5] and included a right to a pretermination on hearing.[6] Although Sullivan may have had rights stemming from the city's employment protections and procedures, those issues are not before us; as "we have stated many times, this Court's 'raise-or-waive' rule precludes our consideration of an issue that has not been raised and articulated at trial." *Resendes v. Brown*, 966 A.2d 1249, 1254 (R.I.2009) (quoting *State v. Bido*, 941 A.2d 822, 828 (R.I.2008)).

### Conclusion

For the reasons stated in this opinion, the judgment of the Superior Court is affirmed. The record may be remanded to the Superior Court.

**5.** Section 12–20 of the Revised Ordinances of the City of East Providence provides: "Upon successful completion of the one-year probationary period, the applicant shall be eligible for appointment to permanent status by the appointing authority."

**6.** Section 11–69(d) of the Revised Ordinances of the City of East Providence provides:

"*Discharge.* An employee may be discharged by the appointing authority for activities prohibited in the Charter and for insubordination, inefficiency, abuse of sick leave, misconduct, disloyalty or other similar just cause. No discharge of a permanent classified employee shall take effect, unless five days prior to the effective date thereof the appointing authority shall give to such employee a written statement setting forth in detail the reasons therefor and shall file a copy of such statement with the director. Any permanent classified employee shall have the right of appeal to the city manager and further appeal to the hearing board in accordance with provisions of this chapter."