David M. CAMPBELL et al.

v.

TIVERTON ZONING BOARD et al.

Nos. 2010–45–Appeal, 2010–46–Appeal.

Supreme Court of Rhode Island.

March 25, 2011.

David M. Campbell, Providence, Pro Se, Joseph J. Nicholson, Esq., Newport, for Plaintiffs.

Peter D. Ruggiero, Kenneth R. Tremblay, Portsmouth, Turner C. Scott, Newport, for Defendants.

Present: SUTTELL, C.J., GOLDBERG, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

Nearly eight years ago, a fire destroyed the building facility of the Tiverton Yacht Club (TYC or defendant). The TYC subsequently, while the "embers were still smoldering," began efforts to rebuild, which became protracted, but ultimately resulted in the grant of a building permit by the Town of Tiverton building official in 2006. However, this only fanned the flames of an existing and increasingly contentious relationship between the TYC and its neighbors to the north, David M. Campbell and Kathleen Campbell, and to the south, John H. Moran, Jr. and Eileen M. Moran (collectively, plaintiffs). The plaintiffs, who reside in homes abutting the site of the former and proposed location of the TYC clubhouse, filed an action for a declaratory judgment and injunctive relief in Newport County Superior Court on April 13, 2007, requesting that the court determine the extent to which "the expansion and intensification represented by the building plans and building permit represent[ed] a continued expansion and intensi-

fication of the TYC since it became a non-conforming use * * * in 1964."[1] They also requested the court to enjoin the Tiverton Zoning Board (TZB) from deciding the plaintiffs' appeals of the issuance of the building permit until further order of the trial court and to enjoin the rebuilding of the clubhouse pursuant to the building plans and issued permit.

The matter was heard before a justice of the Superior Court in a bench trial over several days in 2007. The trial justice found in favor of plaintiffs, holding that the issued building permit for the proposed clubhouse in a residential zone represented an unlawful expansion of the TYC's non-conforming use. She made a number of findings of fact to support this determination, but she also ruled that the record was incomplete concerning the impact of the TYC's marina across the street from the site of the proposed clubhouse. As a result, this matter again came before the trial justice on June 3, 2008, specifically to address the development of the marina. After a hearing, she held that because the marina did not exist in 1964 and operated "in tandem" with the TYC clubhouse, "such operations must be prohibited and declared to be an unlawful expansion of a nonconforming use." The defendants appealed from the declaratory judgment delineating the extent and nature of the TYC's nonconforming use as it related to the issued building permit and its marina operations. Subsequently, the trial justice considered and denied the Campbells' motion for attorney's fees under Rhode Island's legislation entitled Equal Access to Justice for Small Businesses and Individuals, codified at G.L.1956 chapter 92 of title 42 (Equal Access to Justice Act or the act).

The Campbells appealed from the order denying their motion.

While these appeals were pending, the Tiverton Town Council amended its zoning ordinance and map so that the TYC clubhouse lot no longer was the site of a nonconforming use. This consolidated appeal was heard before this Court on March 2, 2011. After careful consideration of the parties' written submissions to this Court as well as their oral arguments, we vacate the judgment of the Superior Court insofar as it prohibits the TYC from operating a marina and deny and dismiss the remainder of that appeal as moot. We affirm the judgment of the Superior Court denying the Campbells' motion for attorney's fees.

## I

### Facts and Travel

The TYC was incorporated in 1945. It relocated from another area in the Town of Tiverton to 58 Riverside Drive and opened a clubhouse at that new location in 1956. When Tiverton adopted zoning in 1964, the TYC became a legal nonconforming use located in a residential (most recently, R–40) zoning district. The site of the former TYC clubhouse, a Victorian-style home, is abutted on Riverside Drive by plaintiffs' residences.

The TYC provides swimming and sailing lessons for members as well as racing and other social events. Across Riverside Drive on its west side is a lot also owned by the TYC (lot 30 or marina lot), currently located in a waterfront zoning district. This waterfront lot has a beach, once used for swimming, and a dock extending out into the Sakonnet River. By 1987, the TYC had added "four new floats" that were used as slips for about twelve boats

---

1. The complaint named the Tiverton Zoning Board, the trustees of the Tiverton Yacht Club (TYC), the TYC, and the Tiverton building official as defendants (collectively, defendants).

for lease to club members only. At that time, the swimming activities relocated from the beach, when a pool was installed on the clubhouse lot, allowing the lot on the west side of Riverside Drive to be used exclusively as a marina.

After the fire destroyed its clubhouse in June 2003, the TYC endeavored to rebuild. Having revised a draft of proposed building plans several times, the TYC finally submitted a plan and application for a building permit to the Tiverton building official on or about April 28, 2006. The building official issued the building permit on or about December 1, 2006, which plaintiffs promptly appealed to the TZB.

While the matter was still pending before the TZB, plaintiffs filed a complaint for declaratory and injunctive relief in Newport County Superior Court on April 13, 2007. They contended that the building plans and permit "indicate[d] the expansion and intensification of a non-conforming use in a residential zone" and "the primary factual issues for determination in reviewing the issuance of the building permit involve the expansion of the TYC since its inception as a non-conforming use and the continued expansion represented by the building plans and building permit." As specific instances of the intensification of the nonconforming use, they cited "the clubhouse footprint, the septic capacity, the addition of a marina, the addition of a swimming pool, the addition of interior space, an enlarged kitchen, an increased function capacity, an enlarged parking area and an intention to go from seasonal use to year-round use." For relief, they requested that the court enjoin the TZB from proceeding to hear and decide the pending building-permit appeal until further order because they submitted that the TZB lacked the statutory authority to decide the appeal. Additionally, plaintiffs sought a declaratory judgment "that the

building plans and building permit represent an unlawful expansion of a preexisting legal, non-conforming use," and they also sought an injunction against the rebuilding of the TYC clubhouse "as contemplated by the building plans and building permit."

The plaintiff's complaint was heard before a justice of the Superior Court in a bench trial on May 8, 9, 15, and 18, 2007. At the trial, both parties called several witnesses to support their respective positions about the extent of the TYC's legal nonconforming use and the alleged expansion and intensification of this use as reflected in its building plans and the issued building permit. The testimony both recounted the history of the TYC and addressed the technical aspects of its proposed rebuild of the clubhouse.

On August 28, 2007, the trial justice issued a decision. She found that "[a] conversion of the clubhouse from seasonal to consistent daily, year-round use is clearly impermissible." The trial justice also found that the increased "linear extent of the building" represented "an illegal structure." Additionally, she ruled that, because the record did not contain any evidence "to support a finding that parking occurred and/or was permitted behind the [c]lubhouse * * * the proposed lot in that area is, incontrovertibly, an impermissible expansion of a nonconforming use." Finally, she denied defendants' "motion to dismiss on the grounds of jurisdiction, justiciability, and standing."

An order was entered on November 30, 2007. The order specifically decreed that "[t]he [b]uilding permit issued to the [TYC] * * * and the attendant building plans, if executed, would produce an impermissible and unlawful extension and/or enlargement of a non-conforming use" as would the proposed septic system, "requiring additional zoning relief." The order prohibited "conversion of the clubhouse

from seasonal to consistent daily, year-round use" and restricted its off-season use "to the monthly holiday/harvest/spring social gatherings." Additionally, the order declared that "[a]ny construction of a clubhouse beyond its original footprint (defined as the exterior perimeter of the foundation) or containing additional interior space would constitute an illegal structure." The trial justice also ordered a further hearing "to determine the extent of the marina use the [TYC] [was] entitled to."

In accordance with the order, a hearing to address the insufficient evidence about the "slips and moorings that the [TYC] had when it became a non-conforming use" was held before the trial justice on June 3, 2008. In a written decision filed on April 24, 2009, the trial justice concluded that "the evidence clearly demonstrate[d] that the marina activities [were] intended to coalesce with the operation of the clubhouse." She also found that the record "regarding the pivotal year of 1964 * * * [was] completely devoid of any evidence probative of marina activities taking place in conjunction with the operation of the [TYC] premises." Therefore, the trial justice concluded that "a tandem marina/clubhouse operation is contrary to the applicable law regarding non-conforming uses and must be disallowed." An order was entered on May 26, 2009, declaring that the marina "was an unlawful expansion of a nonconforming use" and "must be prohibited" because such operations did not exist when the TYC became a nonconforming use in 1964. Accordingly, the order forbade the TYC from "rent[ing] slips and moorings to their members." The TYC filed a notice of appeal from this order on June 10, 2009.

The parties came before the trial justice for the final time on June 30, 2009, for a hearing on defendants' motion for entry of final judgment and plaintiffs' motion to amend the complaint. The trial justice denied plaintiffs' motion to amend the complaint and requested submission of a proposed final judgment. On October 28, 2009, an order was entered denying the Campbells' motion to recover "reasonable litigation expenses" pursuant to the Equal Access to Justice Act. The Campbells filed a notice of appeal from this order on November 16, 2009.

Prior to entry of final judgment, defendants filed a motion in this Court to stay enforcement of the Superior Court order prohibiting the TYC's operation of the marina. On September 18, 2009, this Court granted defendants' motion to stay and ordered the appeal expedited. Final judgment granting declaratory and injunctive relief for plaintiffs was entered on October 29, 2009.

After these appeals were docketed in this Court, the Tiverton Town Council amended the zoning ordinance and map. The amendments became effective on October 26, 2010. The amendments created a "floating zone" designated Waterfront-Related to be placed on the TYC clubhouse lot. Arguing that the amendments rendered defendants' appeal moot because the TYC clubhouse lot no longer was a legal nonconforming use, plaintiffs filed a motion to stay the appeal in this Court, averring that they planned to file an action in Newport County Superior Court challenging the Tiverton Town Council's amendment of the zoning ordinance and map forthwith. On November 29, 2010, this Court denied the motion to stay pending the outcome of the litigation, which was filed in Newport County Superior Court on November 24, 2010.

## II

### Issues on Appeal

The defendant TYC raises five issues in its appeal from the judgment of the Supe-

rior Court granting declaratory and injunctive relief in favor of plaintiffs. First, defendant submits that plaintiffs lacked standing because the relief sought amounted to enforcement of the Tiverton Zoning Ordinance, which only the town had standing to pursue. Second, defendant argues that, even if they had standing, plaintiffs nonetheless were barred from seeking relief in Superior Court because they did not first exhaust their administrative remedies. Third, defendant argues that the trial justice erred when she relied on the current Tiverton Zoning Ordinance as opposed to the original 1964 Tiverton Zoning Ordinance, though conceding that defendant "did not expressly argue this issue at trial." Fourth, TYC contends that the trial justice erred when she prohibited it from operating the marina because it is located "on waterfront property zoned to permit such use as a matter of right." Finally, defendant argues that, even if the trial justice correctly relied on the current Tiverton Zoning Ordinance, she erred when she found that the proposed rebuilding of the clubhouse represented "an unlawful expansion of a nonconforming use." In the second of these consolidated appeals, plaintiff Campbells argue that the trial justice erred when she denied their motion for attorney's fees under the Equal Access to Justice Act.

## III

### Standard of Review

"On appeal, a trial justice's 'decision granting or denying declaratory relief is reviewed with great deference by this Court.'" *Fravala v. City of Cranston ex rel. Baron,* 996 A.2d 696, 704 (R.I.2010) (quoting *Houde v. State,* 973 A.2d 493, 498 (R.I.2009)). "[W]e review a declaratory decree of the Superior Court with an eye to whether the court abused its discretion, misinterpreted the applicable law, over-looked material facts, or otherwise exceeded its authority." *International Brotherhood of Police Officers v. City of East Providence,* 989 A.2d 106, 108 (R.I.2010) (quoting *Sullivan v. Chafee,* 703 A.2d 748, 751 (R.I.1997)). However, this Court reviews questions of law *de novo. Id.* (citing *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority,* 951 A.2d 497, 502 (R.I.2008)).

## IV

### Analysis

### A

### Defendants' Appeal from the Declaratory Judgment in Favor of Plaintiffs

### 1

### Mootness

To the extent that this appeal pertains to the Superior Court judgment declaring the nature and extent of the nonconforming use on the TYC clubhouse lot, it has been rendered moot by the Tiverton Town Council's amendment of October 26, 2010, to the zoning ordinance and zoning map. An appeal is moot when "a decision by this court on the merits [would] not have a practical effect on the underlying controversy." *In re Westerly Hospital,* 963 A.2d 636, 639 (R.I.2009) (mem.) (citing *City of Cranston v. Rhode Island Laborers' District Council, Local 1033,* 960 A.2d 529, 533 (R.I.2008)). The amendment extinguished the TYC's status as a legal, nonconforming use in a residential district. The underlying controversy in this case was the nature and extent of the TYC's nonconforming use. When this nonconforming use was eliminated, so too was the underlying controversy. *See Hallsmith–Sysco Food Services, LLC v. Marques,* 970 A.2d 1211, 1214 (R.I.2009) (holding that elimination of the liquor li-

cense that the plaintiff objected to the transfer of rendered its appeal moot because "a decision on the merits by this Court would have no effect on the actual litigants"). Therefore, "when, as here, later events deprive the litigants of an ongoing personal stake in the controversy, the action is moot." *Sullivan*, 703 A.2d at 753 (declining to opine on the Superior Court's analysis interpreting budgetary provisions of the City of Warwick's charter because the fiscal year during which the dispute occurred had ended and the appellants had abandoned any request for relief beyond seeking an advisory opinion) (citing *Seibert v. Clark*, 619 A.2d 1108, 1110 (R.I.1993)).

▮▮ "As a general rule, the Supreme Court will 'only consider cases involving issues in dispute; [it] shall not address moot, abstract, academic, or hypothetical questions.' " *H.V. Collins Co. v. Williams*, 990 A.2d 845, 847 (R.I.2010) (quoting *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I. 1980)). However, "[t]his Court will review an otherwise moot case only when the issues are 'of *extreme* public importance, which are capable of repetition but which evade review.' " *Id.* at 848 (emphasis added) (quoting *Sullivan*, 703 A.2d at 752); *see In re Derderian*, 972 A.2d 613, 614–15, 617, 618 (R.I.2009) (noting that the Providence Journal's appeal on First Amendment grounds from the denial of its petition for access to completed jury-selection questionnaires undoubtedly raised questions of "great public importance" but declining to address issues rendered moot at the completion of the underlying criminal proceeding because the case's unique facts were not the sort that were capable of

repetition but evaded review). "Issues of extreme public importance usually implicate 'important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights.' " *H.V. Collins Co.*, 990 A.2d at 848 (quoting *In re New England Gas Co.*, 842 A.2d 545, 554 (R.I.2004)). This is "a narrow exception to the mootness doctrine." *In re Westerly Hospital*, 963 A.2d at 638 (quoting *City of Cranston*, 960 A.2d at 533).

▮▮ The instant appeal does not satisfy this narrow exception. It "involves no constitutional issues and does not concern any person's livelihood or right to exercise his or her voting franchise." *Sullivan*, 703 A.2d at 754. Therefore, we decline to address the merits of the declaratory judgment as it relates to the expansion of the TYC's nonconforming use on its clubhouse lot under the previous zoning ordinance.

### 2

### Prohibition of Marina as Expansion of the TYC's Nonconforming Use

▮▮ However, in our view, the portion of the appeal challenging the Superior Court's declaratory judgment precluding the TYC from operating a marina on the waterfront lot is not rendered moot by the amendment to the zoning ordinance and map.[2] The parties do not dispute that, at least from the establishment of the marina through the time of trial and the zoning amendments of October 26, 2010, until the present, the TYC's waterfront lot has been zoned to permit the operation of such a marina.[3] The amendment does not impact

2. We, like the trial justice, are satisfied that the original complaint presented a justiciable controversy.

3. The TYC asserts that consultation of the zoning map from 1964 would lead "any impartial examiner to conclude that the [TYC's]

waterfront lot was indeed zoned for marina use * * * in 1964." The plaintiffs dispute this interpretation of the 1964 zoning map and suggest that the marina lot's zoning designation changed to permit the marina in the 1980s. This divergence does not affect our analysis as the parties agree that the marina

this lot; it applies to the TYC clubhouse lot alone. It is our opinion that the trial justice erred when she reached across Riverside Drive to prohibit the legal operation of the marina.

▇▇▇ The trial justice premised this prohibition on her conclusion that the marina and the TYC were operating in "tandem." We acknowledge that the clubhouse lot and the marina lot share ownership and that the marina is for the exclusive use of TYC members. More significant, though, is the fact that the marina is physically separate and exists independently from the TYC and vice versa. Indeed, as a private-property owner, the TYC has the right to sell the lot on which the marina is situated, and the new owner could operate a marina on this particular lot, standing alone, subject to state and municipal regulations, without restriction. This right to private possession of property is a "sacred" one that should not be taken lightly. *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County,* 301 S.W.3d 196, 212 (Tenn.2009) (quoting *Dibrell v. Morris' Heirs,* 89 Tenn. 497, 15 S.W. 87, 90 (1891)).

Accordingly, under these circumstances, there is no authority for the trial justice's action restricting the TYC's use of its waterfront lot for a marina for what she perceived to be an impermissible expansion of a nonconforming use on a wholly distinct lot as a result of the TYC's use of this waterfront lot as a marina for its members.[1] *See Overton v. Camden County,* 155 N.C.App. 100, 574 S.E.2d 150, 154

(2002) (holding that where the petitioner owned two separate lots, the use of one lot could not be indirectly regulated by conditions contained in a conditional use permit for the other lot). The TYC should not be precluded from continuing to operate legally a marina on its waterfront lot, assuming that it meets the applicable requirements and regulations for doing so. The trial justice incorrectly treated the marina and clubhouse lots as essentially one lot, despite the presence of Riverside Drive between them, rather than confining the appropriate remedy for what she deemed an expansion of a nonconforming use to the lot at issue, that is, the formerly nonconforming clubhouse lot. *See Sanfilippo v. Board of Review of Middletown,* 96 R.I. 17, 20, 21, 188 A.2d 464, 466 (1963) (holding that two lots separated by a highway could not be considered to be one lot). Therefore, we hold that the trial justice abused her discretion when she found that the TYC and the marina were "tandem" entities and exceeded her authority when she consequently prohibited the TYC's operation of the marina on a lot where it was legally permitted. *See International Brotherhood of Police Officers,* 989 A.2d at 108.

### B

### Appeal from Denial of the Campbells' Motion for Attorney's Fees

▇▇▇ The Campbells argue that the trial justice erred when she denied their motion for reasonable litigation expenses pursuant to chapter 92 of title 42. The first line of the act declares that state

was a permitted use on the waterfront lot from the time it was established in the late 1980s.

4. As discussed, the appeal challenging the portions of the judgment declaring the TYC clubhouse lot to represent an expansion of a nonconforming use is moot. We express no opinion on the trial justice's judgment that the marina caused an expansion of the TYC's legal nonconforming use of the clubhouse lot because the subsequent zoning ordinance and map amendments have eliminated this nonconformity.

and municipal agencies "possess a tremendous power in their ability to affect the individuals and businesses they regulate or otherwise affect directly." Section 42–92–1(a). This power "tempts state agencies to proceed against individuals or small businesses which are least able to contest the agency's actions * * *." *Id.* Thus, the act "was propounded to mitigate the burden placed upon individuals and small businesses by the arbitrary and capricious decisions of administrative agencies made during adjudicatory proceedings * * *."[5] *Taft v. Pare*, 536 A.2d 888, 892 (R.I.1988). However, a "prevailing party" will not receive an award of reasonable litigation expenses if the agency's "adjudicatory officer" "finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself."[6] Section 42–92–3(a). Under the act, " '[s]ubstantial justification' means that the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." Section 42–92–2(7).

The trial justice denied the motion for reasonable litigation expenses because the Campbells' "action [was] not an appeal from any adjudicatory proceeding of a municipal agency under the act, from which this Court could grant relief." Specifically, she found that the Tiverton building official was not an agency nor did he conduct an adjudicatory proceeding when he issued the underlying building permit to the TYC. Therefore, the trial justice held that the act was "inapplicable."

The Campbells argue before this Court that the act is applicable to "the wrongful issuance of a building permit to a nonconforming use by a town building official compelling [plaintiffs] to seek a declaratory judgment in the [S]uperior [C]ourt" and that their action meets the criteria for an award of reasonable litigation expenses under the act. They maintain that they are "prevailing parties" because of the declaratory judgment entered in their favor and the town's subsequent revocation of the issued building permit. The Campbells contend that the building official meets the definition of agency under the act because, *inter alia,* he has the "authority to impose fines and seek injunctive relief in the form of cease and desist orders." Finally, they "submit that both the issuance of the building permit and defense of the building permit in the declaratory judgment action must be deemed proceedings qualifying under the [a]ct."

 We review the trial justice's denial of the motion for reasonable litigation expenses under the act, as a question of law, *de novo. State v. Fuller–Balletta,* 996 A.2d 133, 140 (R.I.2010) (citing *International Brotherhood of Police Officers,* 989 A.2d at 108; *Waterman v. Caprio,* 983 A.2d 841, 844 (R.I.2009)). After consider-

---

**5.** General Laws 1956 § 42–92–2(2) defines an "[a]djudicatory proceeding[ ]" as, in relevant part,

"any proceeding conducted by or on behalf of the state administratively or quasi-judicially which may result in the loss of benefits, the imposition of a fine, the adjustment of a tax assessment, the denial, suspension, or revocation of a license or permit, or which may result in the compulsion or restriction of the activities of a party."

**6.** Section 42–92–2(3) defines an "agency" as "any state and/or municipal board, commission, council, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases, to bring any action at law or in equity, including, but not limited to, injunctive and other relief, or to initiate criminal proceedings. This shall include contract boards of appeal, tax proceedings, and employment security administrative proceedings."

ing the positions of both the Campbells and the town, we hold that the trial justice did not err when she denied the Campbells' motion. This is so because, in our view, the building official's issuance of the building permit simply was not an adjudicatory proceeding under the act.[7]

The act defines "adjudicatory proceedings" as "any *proceeding* conducted by or on behalf of the state *administratively* or *quasi-judicially* which may result in the loss of benefits, the imposition of a fine, the adjustment of a tax assessment, the denial, suspension, or revocation of a license or permit, or which may result in the compulsion or restriction of the activities of a party." Section 42–92–2(2) (emphases added). In administrative law, such a proceeding is one "in which the rights and duties of a particular person are decided after notice and an opportunity to be heard." Black's Law Dictionary 725 (7th ed.1999). Here, the building official, assuming *arguendo* that he may be deemed to be an agency under the act, did not conduct a proceeding wherein the parties, the TYC and the town, were given an opportunity to be heard. Rather, he issued the permit after reviewing the application and accompanying documentation, a process that he testified took approximately three hours. Therefore, although his action could have resulted in the "denial * * * of a permit," it simply was not an administrative or quasi-judicial proceeding that may precipitate a prevailing party's claim for reasonable litigation expenses. Section 42–92–2(2).

Likewise, the Campbells' assertion that the Superior Court proceedings in the underlying declaratory judgment action may serve as the requisite "adjudicatory proceeding" is equally unavailing. The act clearly provides that the contemplated "adjudicatory proceeding" is one that occurs at the agency level either administratively or quasi-judicially, not an adjudicatory proceeding in Superior Court. *See McHugh v. Harrington,* 655 A.2d 690, 690 (R.I.1995) (mem.) (holding that the petitioner, who challenged the registry's delay of his license suspension in Administrative Adjudication Court and the appellate division of that court, was entitled to reasonable litigation expenses under the act); *Krikorian v. Rhode Island Department of Human Services,* 606 A.2d 671, 672, 676 (R.I.1992) (holding that the petitioners represented *pro bono* were entitled to reasonable litigation expenses for agency actions that were without substantial justification including the Department of Human Services's denial of medical-assistance benefits and the department's disqualification of a petitioner from a foodstamp program). Although the act provides that a court reviewing the "underlying decision of the adversary adjudication" may make "an award for fees and other expenses," here, the Superior Court was not reviewing such a decision and correctly declined to grant the Campbells relief under the act. Section 42–92–3(b). Therefore, given that a key element to a claim for reasonable litigation expenses under the act is absent, the Campbells' appeal from the denial of their motion must fail.

## V

### Conclusion

For the reasons stated in this opinion, we deny and dismiss the defendants' appeal in part because it is moot and vacate in part the judgment of the Superior Court prohibiting the TYC from operating the

---

7. Because we hold that no adjudicatory proceeding occurred, we need not reach whether the building official falls under the act's definition of agency nor whether his action in issuing the building permit was substantially justified.

marina. We affirm the Superior Court's judgment denying the Campbells' motion for attorney's fees. The record and papers shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.