"(1) In violation of constitutional or statutory provisions;
"(2) In excess of the statutory authority of the agency;
"(3) Made upon unlawful procedure;
"(4) Affected by other error or law;
"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
We note that our "ultimate goal" when interpreting statutes "is to give effect to the purpose of the act as intended by the Legislature." Providence Journal Company v. Rhode Island Department of Public Safety ex rel. Kilmartin , 136 A.3d 1168, 1173 (R.I. 2016) (quoting Webster v. Perrotta , 774 A.2d 68, 75 (R.I. 2001) ). In doing so, we look to the text of a statute because "it is well settled that the plain statutory language is the best indicator of the General Assembly's intent." Twenty Eleven, LLC v. Botelho , 127 A.3d 897, 900 (R.I. 2015) (brackets omitted) (quoting Zambarano v. Retirement Board of Employees' Retirement System of State , 61 A.3d 432, 436 (R.I. 2013) ).
III
Discussion
Before this Court, RIAC argues that it has the authority to ban an individual from *612 any one of its airports without issuing a formal order if that individual poses a threat to airport safety or operations. In the alternative, RIAC argues that either the no-trespass letter issued by RIAC's attorneys on February 14, 2014 or the order issued by RIAC's director on October 8, 2015 may be considered a valid final order that complies with all statutory requirements. Finally, RIAC asserts that Blais's administrative appeal is time barred because Blais never appealed from the no-trespass letter issued in 2014.
A
Mootness
Before addressing the merits of this review, we first address the threshold issue of mootness. During oral argument in this case, the parties represented that, subsequent to the appeal of the 2015 order that is the subject of this review, RIAC issued a later order that lifted the ban and allowed Blais to again make use of the premises at North Central, and that order had itself become the subject of ongoing litigation in other courts. To address potential mootness concerns raised by these representations, we issued a post-hearing order on April 4, 2019, directing the parties "to advise this Court, within five days of the date of this order, of any action pending in any other court that might directly or indirectly relate to this appeal, including the relief sought in those cases." Pursuant to that order, the parties submitted complaints filed by Blais in two separate actions: a 2016 administrative appeal in Superior Court, No. KC-2016-0724, and a 2017 civil action in the United States District Court for the District of Rhode Island, No. 1:17-cv-00075-S-LDA.
We previously have said that "[a]s a general rule we only consider cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical questions." Morris v. D'Amario , 416 A.2d 137, 139 (R.I. 1980). "[A] case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." City of Cranston v. Rhode Island Laborers' District Council, Local 1033 , 960 A.2d 529, 533 (R.I. 2008) (quoting Seibert v. Clark , 619 A.2d 1108, 1110 (R.I. 1993) ). In other words, "[a] case is moot if there is no continuing stake in the controversy, or if the court's judgment would fail to have any practical effect on the controversy." Boyer v. Bedrosian , 57 A.3d 259, 272 (R.I. 2012).
At first blush, RIAC's subsequent order allowing Blais to reenter North Central would seem to render our review of Blais's original administrative appeal moot, because RIAC is no longer preventing Blais from entering North Central. However, in each of the two complaints that were supplied to this Court in response to our April 4, 2019 order, Blais alleged that, while the case presently before this Court was pending, a second hearing was held by RIAC and that a hearing officer had recommended that "it is time that the 'No Trespass' order be removed - but his [Kevin Blais] status be reviewed again in six months." (Emphasis in original.) Both of those complaints concern a final order-which has not been transmitted to this Court as part of the record below and which is not currently before this Court for review-issued by the interim director of RIAC, Peter Frazier, on June 23, 2016, and which allegedly adopted the hearing officer's report and recommendation.[6]
*613 In those complaints, Blais alleges that, although RIAC has again allowed him to use North Central, the agency has also attempted to retain jurisdiction over the present controversy and that it has left the door open to again prohibiting his use of the airport after a subsequent six-month review. If Blais's allegations in those complaints are true, then his continued use of the airport remains subject to review by RIAC's director, and his status has in fact not returned to the status quo that existed before the 2014 no-trespass letter or the 2015 order were issued. Thus, our opinion on the merits of this appeal would indeed have a "practical effect on the controversy" currently on review and, therefore, the case before us at present is not moot. Boyer , 57 A.3d at 272. Accordingly, we shall proceed to consider the merits of RIAC's arguments on review.[7]
B
G.L. 1956 § 1-4-15
This case turns on our interpretation of the powers granted to RIAC under the UARA and, more specifically, the agency's power to issue orders "requiring or prohibiting certain things to be done" pursuant to § 1-4-15. That statute provides, in relevant part:
"In any case where the director, pursuant to this chapter, issues any order requiring or prohibiting certain things to be done, the director shall set forth his or her reasons for the order and state the requirements to be met before approval is given or the rule, regulation, or order shall be modified or changed." Section 1-4-15.
Blais argued below, and the trial justice agreed, that RIAC is required to issue a formal order in accordance with § 1-4-15 to validly prohibit Blais from entering North Central. RIAC disagrees; it argues to this Court that control over entry onto its airports should more plausibly be considered a necessary function of its overarching responsibility to supervise and operate the state's airports and that RIAC therefore was acting within its authority when it directed its attorneys to issue the no-trespass letter prohibiting Blais from entering North Central. That argument is two-fold. First, RIAC argues that § 1-4-15 authorizes RIAC to issue only generally applicable orders in relation to its broader authority vis-à-vis aeronautical regulation, and that its control over ingress to and egress from its airports flows from the "penumbra" of powers implicit in its "supervision over aeronautics within the state, including: * * * [t]he * * * operation, and use of airports[.]"[8] Section 1-4-9(a)(1). Second, RIAC argues that compliance with the procedural requirements in § 1-4-15 and other sections of the UARA, discussed infra , would severely hinder its ability to *614 react to time-sensitive threats to airport security and operations.[9] Neither of these arguments is persuasive.
First, we discern no support, in the UARA or elsewhere, for RIAC's argument that its authority to issue orders is limited to generally applicable aeronautical regulation. Aside from § 1-4-15, which governs "any order requiring or prohibiting certain things to be done," RIAC's authority to issue orders is mentioned in two other sections of the UARA: Sections 1-4-10 and 1-4-11.[10] Neither of those sections, either explicitly or implicitly, prevents RIAC from issuing orders that lie outside the realm of generally applicable aeronautical regulation. Section 1-4-10 requires RIAC's "orders governing aeronautics" to be "kept in conformity as nearly as may be with the federal legislation, rules, regulations, and orders on aeronautics," but does not prevent RIAC from issuing orders relating to other matters within its jurisdiction, such as the "safe and efficient operation of airports, airport facilities, and grounds." General Laws 1956 § 1-2-1(a). On the other hand, § 1-4-11, which relates to the acceptable methods of publicizing orders, plainly contemplates the issuance of orders "applying only to a particular person or persons[.]" Section 1-4-11(b). Moreover, although we agree that the normal incidents of operating and supervising the airports in this state, pursuant to § 1-4-9, may be accomplished without resort to a multitude of formal orders, we do not believe that the indefinite ban RIAC has purportedly imposed here can be plausibly classified as a normal incident of operation. Consequently, we conclude that RIAC's authority to issue orders "requiring or prohibiting certain things to be done," § 1-4-15, is not limited to generally applicable matters concerning aeronautical regulation.
We are similarly unpersuaded by RIAC's argument that the procedural requirements attendant to a formal order would hamstring its efforts to protect the safe and secure operation of its airports. Indeed, RIAC has unquestionable "authority to make arrests for violation of the statutes, laws, rules, and regulations relating to aviation and airport security matters[.]" Section 1-4-14(b). That authority no doubt includes the lesser authority to temporarily eject persons from any airport, without issuing a formal order, for behavior that poses an immediate disturbance or pressing threat.[11] Id. ; see Perrotti v. Solomon , 657 A.2d 1045, 1048 (R.I. 1995) (holding that the state retirement board's enabling legislation, which endowed the board with the authority to "administer" and "operate" the retirement system, provided "sufficiently broad" authority to decide matters not explicitly provided for elsewhere in the statute).
However, it is significant that RIAC has not alleged that Blais violated any law or regulation, and, even though RIAC characterizes Blais's behavior as a threat to airport safety, it does not advance any argument that any potential menace was *615 pressing or time-sensitive to the extent that might justify circumventing the procedural requirements the General Assembly has imposed on the issuance of a formal order.[12]
In short, we conclude that RIAC's authority to issue orders "requiring or prohibiting certain things to be done" pursuant to § 1-4-15 is not limited to generally applicable aeronautics regulation. Thus, it is our opinion that an order issued by RIAC's director pursuant to § 1-4-15 is the exclusive means of permanently barring an individual from entering onto an airport in RIAC's jurisdiction.[13] We therefore reject RIAC's argument that it may bar an individual from an airport in its jurisdiction by means of a no-trespass letter issued through counsel.
C
Formal Order
Having determined that RIAC may permanently prohibit an individual from entering its airports only by issuing a formal order, we now turn our attention to an examination of the communications RIAC sent to Blais to determine whether any of them might plausibly be considered a formal order and whether either the communication of February 2014 or of October 2015 complied with the procedural requirements of § 1-4-15. First, however, we must describe the procedural requirements that must be met before a formal order prohibiting Blais's access to North Central may be enforced.
Section 1-4-15 provides that RIAC's director may issue an order "requiring or prohibiting certain things to be done[.]" However, § 1-4-15 also provides that, before such orders may be enforced, "the director shall set forth his or her reasons for the order and state the requirements to be met before approval is given or the rule, regulation, or order shall be modified or changed." Additional procedural requirements are found elsewhere in the UARA. Section 1-4-11(b) provides that "[e]very order applying only to a particular person or persons named in it shall be mailed to, or served upon, that person or persons" and § 1-4-11(c) requires that all orders "adopted by the director shall be kept on file with the secretary of state."[14]
*616 To summarize, RIAC's director may issue an order "applying only to a particular person or persons," § 1-4-11(b), which "require[s] or prohibit[s] certain things to be done," § 1-4-15, if the following procedural requirements are met: (1) that the order "be mailed to, or served upon, that person or persons," § 1-4-11(b); (2) that it "be kept on file with the secretary of state," § 1-4-11(c); (3) that the director "set forth his or her reasons for the order," § 1-4-15 ; and (4) that the director "state the requirements to be met before approval is given or the * * * order shall be modified or changed," § 1-4-15.
RIAC issued, or caused to be issued, two communications that would have prevented Blais from entering North Central, if either or both were found to be a formal order that was in compliance with the procedural requirements just mentioned-the original no-trespass letter issued by RIAC's attorneys on February 14, 2014, and the director's order of October 8, 2015, which adopted the hearing officer's recommendation that RIAC not lift the ban purportedly imposed by the 2014 no-trespass letter.
The trial justice found that the 2014 no-trespass letter was not enforceable because it failed to set forth the reasons for the order and further that it "did not state the requirements that needed to be met for purposes of modifying or changing the purported ban[.]" We completely agree, and add that the three sentence letter was not signed by RIAC's director, did not provide any statutory basis or authority for banning Blais from North Central, and did not hold itself out as a formal order of RIAC's director.
The October 8, 2015 order demands a different analysis.[15] The trial justice concluded that the October 2015 order was invalid because it merely purported to extend a ban established by the 2014 no-trespass letter, which the trial justice also had found to be invalid. Although we agree with the reasoning of the trial justice that RIAC could not extend a ban that was not valid in the first place, we believe the 2015 order might also be viewed as an independent source of the prohibition on Blais's entry onto North Central because that order "directed [Blais] to remain off the premises of North Central State Airport."
Nevertheless, even were we to assume that the 2015 order is an independent source of the ban, it could not be enforced because it also did not comply with the procedural requirements of the UARA. By stating in the order that the director had "adopted the findings, conclusion and recommendations of [the hearing officer,]" RIAC's director arguably "set forth his or her reasons for the order," § 1-4-15, by incorporating the hearing officer's report and recommendation by reference.[16] We *617 need not decide whether such incorporation was permissible, however, because the director did not in any way "state the requirements to be met before approval is given or the * * * order shall be modified or changed." Section 1-4-15. This, in our opinion, is a fatal flaw.
RIAC argues that § 1-4-15 merely requires the director to state the "requirements to be met" in situations where RIAC would need approval from some other entity before modifying or changing an order. We disagree. The relevant language of § 1-4-15 provides that "[i]n any case where the director, pursuant to this chapter, issues any order requiring or prohibiting certain things to be done, the director shall * * * state the requirements to be met before approval is given or the rule, regulation, or order shall be modified or changed." The statute clearly provides that the director shall provide the requirements to be met "in any case" where the director issues "any order" that requires or prohibits certain things to be done.
We are similarly unmoved by RIAC's urging that "requiring RIAC to forecast what conditions would enable it to lift the ban is impractical[,]" as such a requirement "presupposes that such conditions could be identified" in the first place. However, even if such forecasting is impractical or difficult, it is what the statute requires. As we have said recently, "[i]t is not for this Court to determine whether a statute enacted by the General Assembly 'comports with our own ideas of justice, expediency or sound public policy.' " State v. LeFebvre , 198 A.3d 521, 527 (R.I. 2019) (brackets omitted) (quoting State v. DiStefano , 764 A.2d 1156, 1160 (R.I. 2000) ). This is so because "[w]here the General Assembly has lawfully enacted a statute whose terms are clear and unambiguous, 'the task of interpretation is at an end and this Court will apply the plain and ordinary meaning of the words set forth in the statute.' " Id. at 527-28 (brackets omitted) (quoting State v. Marsich , 10 A.3d 435, 440 (R.I. 2010) ).
We conclude, therefore, that neither the 2014 no-trespass letter nor the 2015 order constituted a valid formal order because neither complied with the UARA's procedural requirements for an order "requiring or prohibiting certain things to be done." Section 1-4-15.
D
The Timely Appeal
We are similarly unconvinced by RIAC's argument that Blais failed to timely appeal RIAC's decision to ban him from North Central because Blais "never appealed the February 2014 letter." The UARA provides that anyone aggrieved by an order issued by RIAC may obtain judicial review under the provisions of the Administrative Procedures Act. See § 1-4-16. Under the Administrative Procedures Act, a complaint must be filed in Superior Court "within thirty (30) days after mailing *618 notice of the final decision of the agency[.]" Section 42-35-15(b).
Unfortunately, RIAC's focus on the 2014 no-trespass letter is misplaced. We agree with the trial justice that the 2014 letter was not a final order. Blais did, however, bring an administrative appeal from the 2015 order, characterized by the agency as a "final order," within thirty days of its issuance. We thus brush aside RIAC's argument on this issue and easily conclude that Blais's administrative appeal was timely made.
Therefore, having concluded that Blais's administrative appeal was timely made and that a formal order is the exclusive means by which RIAC may permanently prohibit an individual's entry onto any airport in its jurisdiction, and after further concluding that neither the 2014 no-trespass letter nor the 2015 order complied with the procedural requirements of an order "requiring or prohibiting certain things to be done[,]" it is the opinion of this Court that the judgment of the Superior Court reversing RIAC's order banning Blais from North Central was correct.
IV
Conclusion
For the reasons stated herein, the judgment of the Superior Court is affirmed. The papers in this case are remanded to the Superior Court with our decision endorsed thereon.
Justice Robinson, dissenting in part and concurring in part.
I respectfully, but very vigorously, dissent from the majority opinion's analysis and conclusion with respect to mootness in this challenging case. Contrary to the determination of the majority, it is my opinion that this case is absolutely moot and that we as a Court should not issue what amounts to an advisory opinion. In my judgment, the presence of mootness should end our consideration of this case.
However, given that the majority has chosen to delve into the merits of the case, I likewise feel obliged to comment on some of the substantive aspects of the Court's opinion-without, however, retreating from my position that the appeal is moot and that this Court should not so very unnecessarily be sailing into uncharted and potentially hazardous waters. I am able to concur in the majority's holding that "an order issued by [the Rhode Island Airport Corporation's (RIAC) ] director pursuant to [G.L. 1956] § 1-4-15 is the exclusive means of permanently barring an individual from entering onto an airport in RIAC's jurisdiction." (Emphasis added.) But, while I concur in that holding, I wish with all due respect to emphatically state my opinion that the director of RIAC (or his or her delegate) has the authority to temporarily bar an individual from airport property without having to issue a formal order pursuant to § 1-4-15.
A
Mootness
I begin by addressing the issue of mootness. "As a general rule, the Supreme Court will only consider cases involving issues in dispute; [it] shall not address moot, abstract, academic, or hypothetical questions." Campbell v. Tiverton Zoning Board , 15 A.3d 1015, 1022 (R.I. 2011) (internal quotation marks omitted). This Court has held that "a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." Hallsmith-Sysco Food Services, LLC v. Marques , 970 A.2d 1211, 1213 (R.I. 2009) (internal quotation *619 marks omitted); see also Boyer v. Bedrosian , 57 A.3d 259, 272 (R.I. 2012). In this case, it was represented at oral argument before this Court that RIAC has issued an order lifting the ban on Mr. Blais's access to the North Central State Airport. In my judgment, that simply ends the inquiry. There is no relief that we are able to afford Mr. Blais at this time. See Hallsmith-Sysco Food Services, LLC , 970 A.2d at 1213 ("This Court will not decide a question if it would fail to have a practical effect on an actual controversy."); see also H.V. Collins Co. v. Williams , 990 A.2d 845, 847 (R.I. 2010) ("It is well settled that a necessary predicate to this Court's exercise of jurisdiction is an actual, justiciable controversy."); Cicilline v. Almond , 809 A.2d 1101, 1106 (R.I. 2002) (stating that the Court will not adjudicate a moot case because "whenever a court acts without the presence of a justiciable case or controversy, its judicial power to do so is at its weakest ebb") (internal quotation marks omitted). This appeal should simply be dismissed as moot. I consider it to be unwise and inconsistent with this Court's traditional jurisprudence to venture where it is not necessary to go.
I am not in the least persuaded by the majority's reference to the complaints pending in the Rhode Island Superior Court and the United States District Court for the District of Rhode Island, which reference is accompanied by the unstated assumption that the mere pendency of those cases in other courts somehow renders this case something other than moot. It is clear to me that the mere existence of those other cases does not transmogrify this case into a justiciable controversy. See H.V. Collins Co. , 990 A.2d at 847. What is more, the majority bases its mootness decision on the purported existence of an order which allegedly stated that Mr. Blais's status would be reviewed by RIAC in six months from the issuance of that purported order; but the majority candidly acknowledges that we have no such order in the record before us in this case . I cannot countenance arriving at a determination that the case is not moot on the basis of mere speculation, based on complaints filed in other courts and a purported order that is not part of the record. The reality of the situation with which we are presented is that, based on the record that is actually before us, there is no actual case or controversy on which a decision of this Court could have a practical effect. See Hallsmith-Sysco Food Services, LLC , 970 A.2d at 1213 ; see also H.V. Collins Co. , 990 A.2d at 847 ; City of Cranston v. Rhode Island Laborers' District Council, Local 1033 , 960 A.2d 529, 533 (R.I. 2008). Consequently, I am of the unshakable opinion that, if this case is not moot, I simply do not know what case would be.[1] While my respect for the author of the majority opinion and for the Court is real, I fear that a major mistake is being made by not simply stopping at the mootness inquiry. To my mind, there is great wisdom in the frequently quoted remark of Shakespeare's *620 Falstaff: "The better part of valor is discretion * * *." William Shakespeare, The First Part of King Henry the Fourth, act 5, sc. 4.
B
The Merits
Although I feel very strongly that the determination of mootness should end this Court's consideration of this case, I feel duty-bound to express my thoughts with respect to the remaining substance of the majority opinion. After considerable reflection,[2] I ultimately agree with the majority's holding that "an order issued by RIAC's director pursuant to § 1-4-15 is the exclusive means of permanently barring an individual from entering onto an airport in RIAC's jurisdiction."[3] (Emphasis added.) However, I wish to clearly state that I am of the definite opinion that the director of RIAC (or his or her delegate) undoubtedly has the authority to temporarily bar an individual from an airport (or indeed all airports) under the director's jurisdiction without issuing a formal order pursuant to § 1-4-15. Any ruling to the contrary would be, in my opinion, a serious threat to airport security in this state.
In spite of my agreement with what I understand to be the holding of the majority as to the permanent barring of individuals, I feel compelled to express my view relative to the following sentence in the majority opinion which I find troubling:
"We therefore reject RIAC's argument that it may bar an individual from an airport in its jurisdiction by means of a no-trespass letter issued through counsel."
To begin, this sentence seems to me to create some confusion, in spite of what the majority says elsewhere in its opinion, as to the issue of whether or not the director has the power to temporarily bar individuals from airports in this state by issuing a no-trespass letter. I acknowledge that the letters at issue in this case involved a permanent barring of Mr. Blais, but the issue of the scope of the director's power in this area is important enough that I feel compelled to make my view known.
The RIAC director, by statute, is tasked with the supervision of the airports of this state, including the "operation[ ] and use"
*621 of those airports. General Laws 1956 §§ 1-2-1(a) ; 1-4-9(a)(1). The director is further charged with promulgating rules and regulations "for the safe and efficient operation of airports, airport facilities, and grounds." Section 1-2-1(a). The General Assembly has further specifically granted RIAC "jurisdiction" over the airports in this state, and it has expressly indicated that it "recognizes that the safe and efficient operation of the airports and airport facilities is of paramount importance to the citizens of the state of Rhode Island." Section 1-2-7.1(a).
In addition, I would also note that the General Assembly has stated that the RIAC director "shall adopt and promulgate, and may amend or repeal, rules and regulations establishing minimum standards with which all air navigation facilities * * * must comply, and shall adopt and enforce, and may amend or repeal rules, regulations, and orders, to safeguard from accident and to protect the safety of persons operating or using aircraft and persons and property on the ground * * *." Section 1-4-10. The director also "has the power to conduct investigations, inquiries, and hearings concerning matters covered by the provisions of this chapter and accidents or injuries incident to the operation of aircraft occurring within" Rhode Island. Section 1-4-12.
In my opinion these statutes represent a broad statutory authority granted to RIAC and its director to govern the airports of this state. Any argument that a temporary barring of an individual from an airport in this state for good cause must be done by formal order and, therefore, must meet all of the statutory requirements discussed in Part III.C of the majority opinion would be misguided; it would be, at best, an instance of putting form over substance. See generally New Harbor Village, LLC v. Town of New Shoreham Zoning Board of Review , 894 A.2d 901, 905 (R.I. 2006) (declining to put form over substance and citing other cases similarly declining to do so). In my view, it is absolutely imperative that the director, as a result of the broad statutory authority granted to him or her, have the authority to deal with dangerous and time-sensitive security or general welfare issues of a developing nature without engaging in an administrative process that could be characterized as cumbersome. See Peak v. United States , 353 U.S. 43, 46, 77 S.Ct. 613, 1 L.Ed.2d 631 (1957) ("That seems to us to be the common sense of the matter; and common sense often makes good law."). In my opinion, the director's statutory authority is sufficiently broad to encompass such a situation. See Perrotti v. Solomon , 657 A.2d 1045, 1048 (R.I. 1995) (holding that the enabling legislation for the state's retirement board was "sufficiently broad so as to include the retirement board's administrative authority to determine pension eligibility" even when that authority was not specifically mentioned in the statute); Cardenas v. Cardenas , 478 A.2d 968, 970 (R.I. 1984) (holding that the Family Court's "grant of power by [G.L. 1956] § 8-10-3 [was] sufficiently broad to include the issuing of a restraining order against a third person in order to reach and apply an asset in the hands of that third person in implementation of an order for support"). As such, it is my belief that the statutory scheme with which we are now confronted certainly provides the RIAC director with the authority to temporarily eject or bar someone from an airport under his or her supervision by use of a no-trespass order. I am, however, able to agree with what I understand the holding in the majority opinion to be-i.e. , that, in order to permanently bar someone from an airport that is under the director's supervision, the director must issue a formal order pursuant to § 1-4-15, which order *622 must then comply with the relevant statutory requirements.
C
Conclusion
Accordingly, I must record my respectful, but very vigorous, dissent from the opinion of the majority with respect to the issue of mootness. I concur in the remaining portions of the majority opinion-except that I believe that the director's authority to temporarily bar an individual from a state airport is worthy of additional emphasis.

The complaints that were provided to us pursuant to our order of April 4, 2019 do not explain what occurred after the expiration of that six-month review, or in the years since.

Even if we were to hold this case to be moot, it may well have fallen into an exception to the mootness doctrine. See Boyer v. Bedrosian , 57 A.3d 259, 281 (R.I. 2012) (explaining that this Court will review otherwise moot issues if "the issues are of extreme public importance, which are capable of repetition but which evade review") (quoting Campbell v. Tiverton Zoning Board , 15 A.3d 1015, 1022 (R.I. 2011) ).

RIAC's authority to supervise and operate the various airport facilities in Rhode Island cannot be disputed. RIAC's authority in this area is reinforced by G.L. 1956 § 1-2-1(a), which provides that "[t]he director [of RIAC] has supervision over the state airport at Warwick and any other airports constructed or operated by the state[,]" and § 1-2-7.1(a), which recognizes that RIAC "has jurisdiction over the state airports and airport facilities, and the general assembly recognizes that the safe and efficient operation of the airports and airport facilities is of paramount importance to the citizens of the state of Rhode Island."

RIAC also briefly argues that § 1-4-15 does not apply because "[t]he February 14 Letter generally prohibited Blais from entering North Central; it did not 'prohibit certain things to be done.' " We see utterly no merit in this argument. By purportedly prohibiting Blais from entering North Central, RIAC has attempted to set forth a "thing" which may no longer "be done" by Blais-namely, entering North Central. Section 1-4-15 therefore clearly applies.

The ability to appeal from orders of RIAC's director, and issues related to such appeals, is also mentioned in §§ 1-4-16, 1-4-18, and 1-4-19.

In addition, there is nothing in the statutory framework that would prohibit RIAC from seeking injunctive relief in the Superior Court in appropriate circumstances.

What is more, if RIAC was truly convinced that Blais's behavior was a time-sensitive threat to security warranting circumvention of the UARA's procedural requirements, it is difficult to understand why, in its 2015 order prohibiting Blais from entering North Central, RIAC expressly allowed Blais to "use any of the other Rhode Island Airport Corporation facilities[.]"

Blais argues that a litany of constitutional concerns is raised by orders prohibiting individuals from entering onto public airports. The trial justice did not reach those issues and, because we affirm the judgment of the Superior Court on statutory grounds, we need not, and shall not, consider Blais's constitutional concerns. See In re Brown , 903 A.2d 147, 151 (R.I. 2006) ("Neither this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so.").

RIAC contends that any formal order it issued would also need to meet the requirements of § 1-4-11(a), which provides:
"Every general rule, regulation, and order of the director shall be posted for public inspection in the main aeronautics office of the director at least five (5) days before it becomes effective, and shall be given any further publicity, by advertisement in a newspaper or otherwise, as the director deems advisable."
RIAC argues that such a posting requirement would render impractical, and potentially unsafe, any attempt to prohibit a dangerous person's entry onto the premises of an airport by way of a formal order. We disagree. Section 1-4-11(a), by its terms, applies to "[e]very general rule, regulation, and order[.]" (Emphasis added.) In contrast, § 1-4-11(b) governs "[e]very order applying only to a particular person or persons[.]" We conclude that, by including the word "general" in § 1-4-11(a), the General Assembly intended the posting requirement to apply only to generally applicable rules, regulations, and orders and not to personal orders that apply only to particular persons and for which § 1-4-11(b) governs the applicable notice requirements.

Unlike the 2014 no-trespass letter, the 2015 order had several hallmarks of a formal order. It was signed by Kelly Fredericks, the director of RIAC, was mailed to Blais's home address in compliance with § 1-4-11(b), and included a notice of Blais's right to appeal, which referred to the communication as a "final order."

Blais argued before the hearing officer, and implied in his brief to this Court, that the administrative hearing held in June 2015 was not authorized by law because "[t]he Notice of Hearing did not comply with Rhode Island open meeting notice requirements set forth in R.I. Gen. Laws § 42-46-6." He seems to argue that his opportunity to cross-examine the witnesses at the hearing belied the purported nature of the hearing as an "open meeting/public hearing." Blais also takes issue with the location of the hearing, as it was "at the one and only location, North Central State Airport, where RIAC had purportedly banned [him] from accessing." Despite those clamorous protests, Blais does not identify for our review a single requirement that was not met, nor error that was made, in arranging or holding the June 2015 hearing, and he cites no caselaw in support of his apparent dissatisfaction with the hearing process. Because we affirm the decision of the Superior Court, we need not and do not consider Blais's undeveloped argument regarding the propriety of the Notice of Hearing or the June 2015 hearing itself. We do observe, however, that the UARA gives the director of RIAC "the power to conduct investigations, inquiries, and hearings concerning matters covered by the provisions of [the UARA] and accidents or injuries incident to the operation of aircraft occurring within this state." Section 1-4-12.

I acknowledge that this Court has recognized that "[o]ne narrow exception to the mootness doctrine exists for those cases that are of extreme public importance, which are capable of repetition but which evade review." Hallsmith-Sysco Food Services, LLC v. Marques , 970 A.2d 1211, 1214 (R.I. 2009) (internal quotation marks omitted). "For a matter to be deemed of extreme public importance, it will usually implicate important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." City of Cranston v. Rhode Island Laborers' District Council, Local 1033 , 960 A.2d 529, 533-34 (R.I. 2008) (internal quotation marks omitted). In my opinion, the invocation of the exception would not be appropriate in this case since we are not confronted with an issue of extreme public importance as defined in our case law.

I wish to emphasize that, while I now intellectually assent to the majority's interpretation of the statutory scheme at issue, I did not reach that conclusion because the answer was self-evident or immediately clear to me. In view of the absence of controlling precedent and bearing in mind the historical reality of the need for safety and security in our airports, it was only with difficulty that I acceded to the majority's reasoning. I do not believe that we should elevate administrative formalism over the need to protect the health and safety of those who use our airports.
For the same reason, I do not entirely fault the director for the remedial action that he took vis-à-vis Mr. Blais, even if he did not use the correct means in so doing. (The majority opinion nicely narrates the troubling provocations that resulted in the decision to ban Mr. Blais from the North Central State Airport.) Notably, the director lacked the legal guidance that today's majority opinion provides; and, although I concur in the majority's judgment with respect to the action that he took in response to those provocations, I would caution against being too quick to judge him too harshly in a Monday morning quarterbacking fashion. Due process is an important value, but it is not the only important value; there is wisdom in the ancient maxim, salus populi suprema lex . (The well-being of the citizenry is the highest law.) See Beer Co. v. Massachusetts , 97 U.S. 25, 33, 24 L.Ed. 989 (1877).

I deem it worth noting that I also concur in the conclusion reached by the majority in Part III.C of its opinion that the communications at issue sent to Mr. Blais did not constitute valid formal orders because they did not comply with the dictates of G.L. 1956 § 1-4-15 and other relevant statutory sections.